## Ridgely, Guardian, et al. v. Brand; Exor., et al.

(Decided June 21, 1911.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Wills—Finding of Jury—Evidence Considered Undue Influence—Testators Capacity to Make a Will.—This court will not be justified in directing a reversal in a will case because the jury refused to accept certain facts and circumstances proven, as an evidence of undue influence, when considered in connection with the other evidence offered in support of the testator's capacity to make a will according to a fixed purpose of his own.

2. Inducement of Testator to Make a Will—Unbiased Mind.—It is needless to enter at length upon a consideration of the question as to what induced the testator to make the will in the way and manner in which he did, or why he preferred some of the natural objects of his bounty to others, for, while it is not such a will as we should have made, a jury under proper instructions has found that it was the product of the free and unbiased mind of the testator who at the time was competent to make a will.

3. Verdict—Supported by Evidence.—There being evidence to support the verdict, unless the court erred to the prejudice of the substantial rights of the contestants in some of the particulars herein enumerated, the verdict must be approved and the judgment affirmed.

A. SCOTT BULLITT, MARK RYAN, JAMES HEMPHILL, BURWELL K. MARSHALL and JOHN L. SULLIVAN for appellant.

CHARLES H. SHIELD, CHARLES H. GIBSON and DAVID W. BAIRD for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

A. O. Brannin died a resident of Louisville, Kentucky, on June 30, 1903. In July following his will was probated, and John H. Brand, his son-in-law, qualified as executor in accordance with the provisions of the will. He left his entire estate to his three daughters, giving to two of them their shares in fee while to the third he gave the use of her property for life, with remainder at her death to her two sisters. To the children of two deceased daughters he gave nothing.

In March, 1908, an appeal was taken from the order probating his will, and in the circuit court it was sought to set it aside on the ground of want of capacity on the part of testator to make a will and undue influence exercised over him in its execution. Upon a trial before a jury the will was upheld, and the contestants have appealed, and now seek a reversal of the judgment predicated upon that verdict. The grounds relied upon are errors of the trial court in the admission and exclusion of evidence.

It is insisted first that the court erred in refusing to allow the witness, James M. Fetter, to testify as to certain statements made by the testator in his presence some ten years or more prior to the date of the execution of the will. Second, in refusing to permit counsel for appellants to examine John H. Brand, an adverse party, as if on cross-examination. Third, in refusing to permit the witness, Wm. G. Osborn, to testify to declarations made by the testator as to his views of the duties of a grandparent towards his grandchildren when making his will; and fourth, in excluding the testimony of Betty Sherley Ewing to the effect that the testator had promised to make good a loan of $3,000 of her money which he had loaned to a son-in-law, Tom Zimmerman.

The testator had six children, five daughters and one son. Elizabeth married John H. Brand, and was living at her father's death. Laura married Louis Sherley and died many years before her father, leaving two children, Brannin Sherley and Betty Sherley. Brannin died, leaving one child, Elizabeth, who married ―――― Shevlin. Betty married George Ewing. Alice married T. G. Gaylord, and was living at her father's death. Mattie married Thomas Zimmerman, who died, and later she married W. K. Campbell. She was living at her father's death, but has since died. Fronny, the fifth daughter,

married Benjamin Ridgely, and died many years before her father, leaving one child, Louise Ridgely. His only son died many years ago, leaving no children.

The evidence shows that Mr. Brannin was born in 1819, so that at the time of his death he was past eighty-two years of age. He moved to Louisville shortly after reaching his majority and for many years was recognized as one of the most prominent and prosperous citizens of that city. During this time he accumulated a considerable estate, a portion of which he lost in the latter years of his life through unfortunate business ventures, though at the time of his death he was still possessed of an estate variously estimated at from $40,000 to $60,000. All of the evidence showed him to be a man of good mind. There is no evidence to the contrary. And this condition of mental vigor remained with him to the date of his death, which was something more than a year after the will was written.

There is no direct evidence that any undue influence was exercised over him in the making of his will. But it is urged that, as the will is unnatural in its provisions, that some of the natural objects of his bounty were without reason excluded from participation in his estate, while others were unduly favored, that is, of itself, an evidence of undue influence. It is likewise urged that, because the will was not drawn in accordance with declarations made by the testator some twenty years prior to the time of the execution of this will, this is an evidence of the exercise of an undue influence over him in the draft of his will. And lastly it is urged, as an evidence of undue influence exercised over him by his son-in-law, John H. Brand, whose wife is given a large part of the estate, that said Brand was named as executor of his will and trustee of that portion of the estate given to his sister-in-law, Mrs. Campbell, and the court requested that no bond be required of him.

All of these are arguments that were properly addressed to the jury that passed upon this question, but the jury did not regard them as of sufficient importance to warrant them in finding that the testator was unduly influenced in the execution of his will. Certainly we would not be justified in directing a reversal because the jury refused to accept these facts and circumstances as an evidence of undue influence, when considered in connection with the other evidence offered in support

of the testator's capacity to make a will, according to a fixed purpose of his own.

The evidence shows that, for twelve years or more before the execution of this will, the testator had withdrawn from active business life and was devoting his time to the care and attention of his own private business. His last business venture was in connection with the firm of Brannin, Brand & Glover, which was engaged in the handling of leaf tobacco. In 1886 or 1887 the warehouse of this firm in the city of Louisville were destroyed by fire and the losses sustained because thereof were heavy. He lived with his daughter, Mrs. Brand, for several years prior to his death, and was living with her at the date of the execution of his will. It is needless to enter at length upon a consideration of the question as to what induced him to make the will in the way and manner in which he did, or why he preferred some of the natural objects of his bounty to others, for, while it is not such a will as we would have made, a jury under proper instructions has found that it was the product of the free and unbiased mind of the testator, who at the time was competent to make a will. There being evidence to support the verdict, unless the court erred to the prejudice of the substantial rights of the contestants in some of the particulars herein enumerated, the verdict must be approved and the judgment affirmed.

The chief complaint is that the court erred in refusing to permit the witness Fetter to testify to a conversation which took place at his house between the testator and John H. Brand, his son-in-law, when they were closing up a business transaction growing out of the settlement of their tobacco losses following the fire. The only purpose that the evidence of Fetter, which contestants wanted to introduce, could have served would have been to show that, at that time, the testator had a poor opinion of his son-in-law and was very angry with him because of the way he had conducted certain business transactions. Possibly this evidence was competent, but when considered in the light of all the evidence in this record bearing upon the social and friendly relations existing between testator and his son-in-law, covering a period of thirty years, it becomes unimportant, and its exclusion cannot be regarded as of sufficient importance to be seriously considered as a reversible error. Besides, Fetter

was permitted to testify that testator on that occasion spoke very harshly and complainingly of the conduct of his son-in-law, so that the jury understood that, for the time being, at least, there was some feeling on the part of the testator growing out of their business transactions. But all of this was long before the will was executed. In the years that followed, from letters written by the testator, it is apparent that all of the money which he had to pay out because of the tobacco loss for his son-in-law was repaid to him, and the relations between them from that time on, so far as the record shows, were of the most cordial nature.

The appellants likewise complain that the court erred in refusing to permit them to examine John H. Brand in chief as if on cross-examination, as authorized by sec. 606, sub-sec. 8, of the Code of Practice. We have carefully read the evidence in chief of Mr. Brand, covering nearly a hundred typewritten pages, and find that only in a few instances were questions asked which were not permitted to be answered, and these, in the main, were upon matters which the court held to be immaterial. The court permitted the evidence, in the interrogation of this witness, to take a wide range, covering fully all of his personal and business relations with the testator, and many collateral matters having little or no bearing upon the questions in issue. We fail to find in the conduct of the examination of this witness any rulings of the trial court prejudicial to the substantial rights of appellants.

The objection that the court erred in refusing to permit the witness, Wm. G. Osborn, to testify as to declarations made by the testator as to his views of the duties of a grandparent towards his grandchildren when making his will is not well taken, for the court permitted this question to be answered, and the witness answered that he had many times heard Mr. Brand say that a man had no moral or legal right to cut off his children, and that he was talking about his grandchildren when he made this statement. The question which the court refused to let the witness answer was about a detailed conversation concerning the will of Zack Sherley, and what the testator thought of that will. When he had permitted the witness to testify as to what the testator said in general as to the duties of parents and grandparents, it was not error to refuse to permit him then to go into detail and state the objections which the testator might

have made to him to various wills or to any one will in particular. The jury could not have failed to gather from the testimony of Mr. Osborn which they were permitted to consider that the testator had told him that he did not believe it right or proper for a grandparent to disinherit his grandchildren. This statement could not have been strengthened by reference to individual or isolated cases.

Lastly, complaint is made that the court erred in excluding the testimony of Betty Sherley Ewing, to the effect that the testator had promised to make good a loan of $3,000 of her money which had been lost. This evidence could have thrown no possible light upon either the mental capacity of the testator or the question as to whether or not he was unduly influenced in the draft of his will, and the court did not err in excluding it.

Upon a consideration of the entire record we fail to find any ruling of the trial court prejudicial to the substantial rights of the appellants, and the judgment is, therefore, affirmed.