(134 App. Div. 453.)

## MULDOON v. CITY FIREPROOFING CO.

(Supreme Court, Appellate Division, First Department. November 12, 1909.)

MASTER AND SERVANT (§ 301*)—INJURIES TO THIRD PERSONS—NEGLIGENT DRIVER.

A driver, by whose negligence plaintiff was injured, was directed to go with his team to defendant's factory by a truckman doing carting for defendant, whenever it wanted it done, and from whom the driver was accustomed to obtain employment. Nothing was said about his employment on arriving at the factory, but he was directed by the foreman to hitch onto a loaded truck, and was instructed at the office to take it to where it was to be used. He was given a ticket to obtain a receipt from the foreman there, to whom he was to report, and from whom he received help in unloading. Returning to the factory, he found the truck which he left there in the morning, and which belonged to the truckman who sent him, had been loaded, and he was directed to deliver the load on it at the same place for which he was destined at the time of the accident. Afterwards defendant paid the price for hauling the two loads to the truckman who sent the driver to defendant, and he paid it to him, as he always had done before, when he hired men not regularly in his employ to work for defendant. The driver was not instructed by any one as to care in driving, and the receipts for material delivered were usually returned, either to the truckman who sent him, or to defendant. *Held*, that the driver was in defendant's employ as matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. § 301.*

For other definitions, see Words and Phrases, vol. 3, pp. 2368, 2369.]

Appeal from Trial Term, New York County.

Action by Annie Muldoon against the City Fireproofing Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Wm. D. Reed and Charles A. Taussig, for appellant.
James E. Smith, for respondent.

LAUGHLIN, J. We are of opinion that the evidence entitled the plaintiff to have the case submitted to the jury. The action was brought to recover damages for personal injuries sustained by the plaintiff by being struck and knocked down by a horse attached to a truck and run over by the truck at the southwesterly corner of Broadway and 103d street on the 10th of December, 1903, while she was waiting to board a downtown car which was approaching and had been signaled to stop for her. No question is raised but that the evidence was sufficient to take the case to the jury on the question of freedom from negligence on the part of the plaintiff and negligence on the part of the driver of the truck. The case was taken from the jury on the theory that it was not shown that the driver of the truck was in the employ of the defendant.

The team of horses was owned by one Clavin, who was driving at the time. The truck was heavily laden with fireproofing material owned by the defendant. It had been loaded at the defendant's factory at Fifty-First street and Eleventh avenue by employés of the defendant,

and the material was, by direction of the defendant, being conveyed to the building now known as the "Marseille Hotel" at the southwesterly corner of Broadway and 103d street, which was then being built, and was there to be delivered to a contractor on an order from the defendant. The services of Clavin were not engaged by the defendant directly. It appears that one McKeon, who was originally made a party defendant, but against whom the plaintiff elected to discontinue the action on the trial, was doing carting work for the defendant, and had been off and on, for about 20 years, without any contract other than an agreement to receive $3.50 per load for hauling material on long journeys, on which only two loads a day could be delivered, or $7 per day for a team, truck, and driver. It is to be inferred from the evidence, although it does not expressly appear, that Clavin, who was driving the team at the time of the accident, was accustomed to obtain employment from or through McKeon; for he testifies that on the morning of the accident he informed his brother, who was in the employ of McKeon, that he desired to go to work with his team, and was informed by his brother that McKeon wanted him, and that he was shortly thereafter directed by McKeon to take his truck and go up to the defendant's factory, which he did, arriving there about 8:30 o'clock. According to his testimony, nothing was said about his employment when he arrived at the defendant's factory; but he was at once directed by the foreman to unhitch his team from the truck which he had brought and hitch onto a truck of the defendant, which was there already loaded with fireproofing material. After complying with this direction, he obtained instructions at the office of the defendant to take the load to 143d street and Hamilton Place, where it was to be used, and was given a ticket to obtain a receipt from the foreman on the delivery of the material at that place. He then boarded his wagon and carried out the instructions which he received.

It seems that he had done similar carting for the defendant, evidently at the instance of McKeon, on former occasions. At the place of delivery of the material his instructions were to report to the foreman, from whom he received help to unload the truck, and he customarily assisted in unloading it. After delivering the material, he returned to the defendant's factory, arriving there at about 3 o'clock in the afternoon, and found that in the meantime McKeon's truck, which he left there in the morning, had been loaded with fireproofing material. He was then directed by the foreman to hitch onto that truck, and in like manner he received instructions to deliver the material at 103d street and Broadway, the place for which he was destined at the time of the accident. Some time later, the exact time does not appear, the defendant paid $7 to McKeon for the delivery of these two truck loads of material, and McKeon, without deduction for commissions or otherwise, delivered the same to Clavin, the driver.

McKeon had teams and trucks of his own, which he used in carting; but it does not appear whether any of his teams did work for the defendant on the day in question. It does appear that he was not personally at the defendant's factory on that day. McKeon testified that he had no contract or understanding with the defendant with respect to liability for breakage of the fireproofing material, and that

the only arrangement he had was that he was hired, as already stated, when defendant wanted carting done. It appears that he was not regularly employed, and that at times a week or more would elapse during which he could do no carting for the defendant. He never paid any expenses incident to carting, nor any ferry charges. It does not expressly appear that there ever were any such expenses. Whenever he hired men not regularly in his employ to do work for the defendant, he always turned over the full pay of $3.50 per load, or $7 per day, to them. According to his testimony, the only profit he made was on his own teams; and the inference is that at times when necessary he obtained other teams and wagons in order to retain the defendant's carting business.

The undisputed evidence is that McKeon gave no instructions to Clavin or to the other men with respect to their duties, other than directing them to go to the defendant's factory, and that the only instructions they received were received from the agents and servants of the defendant. It does not appear that they received any instructions from any source with respect to care in driving to avoid breaking the material, or with respect to handling it, or the route to be followed. The tickets which the drivers received, being receipts for the material delivered, were returned either by them or McKeon to the defendant.

We are of opinion that under the principal test, namely, in whose business was he engaged at the time, and under whose orders was he working, or who had authority to give him direction with respect to what he was doing? prescribed by all the cases to determine whose servant an individual is at a particular time, Clavin was in the employ of the defendant, as matter of law. Howard v. Ludwig, 171 N. Y. 507, 64 N. E. 172; Baldwin v. Abraham, 171 N. Y. 677, 64 N. E. 1118; Murray v. Dwight, 161 N. Y. 301, 55 N. E. 901, 48 L. R. A. 673; Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 50 N. E. 500, 66 Am. St. Rep. 537; Wyllie v. Palmer, 137 N. Y. 248, 33 N. E. 381, 19 L. R. A. 285; Linnehan v. Rollins, 137 Mass. 125, 50 Am. Rep. 287. He was engaged in its business, transporting a truck load of its material, to be delivered when, where, and as directed. He was not exercising an independent calling. He placed himself, his team, and wagon at the disposal of the defendant, and the defendant accepted his services and loaded his wagon with such material as it saw fit, and directed that it be transported and delivered as it saw fit. If it did not outline the route, there can be no doubt but that it was within its province to do so.

The only employment Clavin had, according to this record, was from the defendant; and the defendant was at liberty to accept or reject his employment, and to discharge him at any time. Apparently the only connection that McKeon had with it was to secure the employment for Clavin; and although, doubtless, McKeon's object was to continue employment for his own teams and wagons, that did not make him the employer of Clavin. McKeon, according to the evidence, was under no obligation to pay Clavin for his services or for the use of his team. If the defendant had refused to employ Clavin, he would not, on the record before us, have any cause of action against McKeon; and, on the other hand, if Clavin had not been paid, or had not

authorized McKeon by a course of conduct to receive his pay, there can be no doubt that on this record the defendant would have been liable for his services, not on an express contract, probably, but on quantum meruit. Therefore we are of opinion that the court erred, and that a new trial should be granted.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.

