WILLIAM RAMSEY, Appellant, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

(Argued October 23, 1935; decided November 20, 1935.)

*William J. Flynn* for appellant. The defendant could not by its deliberate violation of the Interstate Commerce Commission order change its status and thrust a new master upon its operator, so as to shield itself from liability to the plaintiff. (*Murray* v. *Union R. R. Co.*, 229 N. Y. 110; *Doran* v. *N. Y. C. I. R. R. Co.*, 239 N. Y. 448; *Costigan* v. *N. Y. & S. R. R. Co.*, 160 App. Div. 597; *Miller* v. *International Harvester Co.*, 193 App. Div. 258; *Miller* v. *City of Rochester*, 196 App. Div. 853; *Wyllie* v. *Palmer*, 137 N. Y. 248; *Hallett* v. *N. Y. C. & H. R. R. R. Co.*, 167 N. Y. 516; *Wolfe* v. *Mosler Safe Co.*, 139 App. Div. 848; *Wirth* v. *General R. Signal Co.*, 136 App. Div. 536; *Muldoon* v. *City Fireproofing Co.*, 134 App. Div. 453; *Reed* v. *Met. St. R. R. Co.*, 58 App. Div. 88; *Baldwin* v. *Abraham*, 57 App. Div. 67; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Higgins* v. *W. U. Tel. Co.*, 156 N. Y. 75; *Cowell* v. *Saperston*, 149 App. Div. 373; 208 N. Y. 619; *Ford* v. *Arbuckle*, 107 App. Div. 221; *Wright Steam Engine Works* v. *Lawrence Cement Co.*, 167 N. Y. 440; *Casey* v. *Davis & Ferber Machine Co.*, 209 N. Y. 24; *Genovesia* v. *Pelham Operating Co.*, 130 App. Div. 200; *McNamara* v. *Leipzig*, 227 N. Y. 291; *Charles* v. *Barrett*, 233 N. Y. 127; *Meade* v. *Motor Haulage Co.*, 233 N. Y. 527; *Cannon* v. *Fargo*, 222 N. Y. 321.)

*Mark N. Turner* and *Raymond C. Vaughan* for respondent. At the time of the accident the crane operator was a servant of the consignee and was not a servant or employee of the defendant. (*Denton* v. *Yazoo & M. V. R. Co.*, 284 U. S. 305; *Standard Oil Co.* v. *Anderson*, 212 U. S. 215; *Columbus & G. Ry. Co.* v. *Owens*, 121 So. Rep. 265; *Linstead* v. *Chesapeake & Ohio Ry. Co.*, 276 U. S. 28; *Rockwell* v. *Grand Trunk Western Ry. Co.*, 250 N. W.

Rep. 515; *Rau* v. *Wilkes Barre & E. R. Co.*, 311 Penn. St. 510; *Harrell* v. *Atlas Portland Cement Co.*, 250 Fed. Rep. 83; *The Elton*, 142 Fed. Rep. 367; *The Maude*, 169 Fed. Rep. 487; *The Joseph John*, 86 Fed. Rep. 471; *The Commandant*, 23 Fed. Rep. [2d] 100.) The rules and regulations of the tariff have the force and effect of Federal statutes and a judgment cannot be rendered against the defendant contrary to such rules and regulations without imposing an undue burden upon interstate commerce in violation of the commerce clause of the Constitution of the United States and without denying defendant the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. (*N. Y. C. & H. R. R. R. Co.* v. *York & Whitney*, 256 U. S. 406; *P., C., C. & St. L. Ry. Co.* v. *Fink*, 250 U. S. 577; *Great Northern Ry. Co.* v. *Hyder*, 279 Fed. Rep. 783; *N. Y. C. R. R. Co.* v. *Federal Sugar Refining Co.*, 235 N. Y. 182; *N. Y. C. R. R. Co.* v. *Warren Ross Lumber Co.*, 234 N. Y. 261; *Penn. R. R. Co.* v. *Titus*, 216 N. Y. 17; *N. Y. C. R. R. Co.* v. *Sharp*, 124 Misc. Rep. 265; *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534; *Metz Co.* v. *B. & M. R. R. Co.*, 227 Mass. 307; *Georgia, F. & A. R. R. Co.* v. *Blish Milling Co.*, 241 U. S. 190; *Minturn* v. *N. Y. C. R. R. Co.*, 220 App. Div. 222.)

HUBBS, J. This is an action to recover damages because of a personal injury. Appellant was an employee of the Kenmore Construction Company which was engaged in the construction of a prison at Attica, New York. At the time of his injury, appellant was engaged with two other employees of the Kenmore Company in transferring from the respondent's yard at Attica certain fabricated steel backs for prison cells, which measured about nine by six feet and weighed between six and seven hundred pounds each.

The cell backs were shipped to Attica by freight and were loaded on a gondola car located on one of the respondent's side tracks. Respondent owned a crane

which was placed on a flat car and was in charge of and operated by one of its servants. The crane was the ordinary railroad crane with a boom about thirty feet long. A cable ran from the drum up over the end of the boom and at the end of the cable a shackle was attached. The method employed in unloading the cell backs was to fasten the shackle on to the cell backs one at a time as they rested on the car, to then raise them until they reached a position higher than the side of the car, swing the boom so that the cell backs would swing free of the side of the car and lower them to the ground. At the time appellant was injured, one cell back had been unloaded and placed on the ground. He was on the ground leveling it up so that the next one to be unloaded could be placed on top of it. He was on his knees leaning over and in that position could not see the movement of the crane or its operator. While he was in that position, a cell back was lifted from the car higher than its side. The operator started to lower the cell back to the ground. In coming down the end of the cell back hit a lug on the side of the car which released it from the shackle and it fell and seriously injured appellant. He was in full view of the crane operator but he did not receive any warning. It was the duty of the crane operator to swing the boom out from the side of the car so that the cell back would clear the side of the car. The evidence raised a question of fact as to the negligence of the operator of the crane.

The learned trial court decided as a matter of law that the operator of the crane was not at the time a servant of the respondent but that he and the crane had been loaned to the Kenmore Company, appellant's employer, and that the operator was at the time a special servant of that company. A verdict was directed in favor of respondent and the judgment based thereon has been affirmed by the Appellate Division by a divided court.

The shipment of cell backs was an interstate shipment, shipped at the carload lots rate. A tariff provision of the Interstate Commerce Commission, section 1 of rule

27 of the official classification in effect at the date of the shipment, reads: " Owners are required to load into or on cars freight for forwarding by rail carriers, and to unload from cars freight received by rail carriers, carried at carload ratings."

The contention of respondent which has thus far been sustained is that the tariff provision had the effect, as a matter of law, to change the status of the crane operator, respondent's servant, and make him for the time the special servant of the Kenmore Company.

Prior to the day of the accident over forty cars of cell backs had been unloaded from cars by the use of the same crane and operator. The crane and its operator were furnished by respondent, the Kenmore Company having nothing to do with the crane or its operator or with the shifting of cars. Respondent's local agent notified the Kenmore Company where the cars were to be placed for unloading. The crane operator told the men when to stop work. The Kenmore Company did not pay or agree to pay any part of the crane operator's wages or share in any way the expense of operating the crane. The crane operator was a regular employee of respondent and his wages were paid by it.

The liability of an employer for damages caused by the negligence of a servant rests upon the doctrine of *respondeat superior*, which makes a master liable for injuries resulting from the negligent acts of a servant done within the scope of his employment in the master's service. If, at the time of an injury, the servant negligently causing the injury, is not in the service of his employer, the principle is not applicable and the employer is not liable, but a special master, one in whose service the servant at the time is engaged, may be liable.

The question presented in the case at bar is, who was the master at the time of the injury, the respondent railroad company or the Kenmore Company? The determination of the question of who was the master at a particular time is sometimes a question of law. More often it presents a question of fact to be decided by a

jury under instructions from the court upon the legal principles applicable. The test for determining who is liable for the negligent acts of a servant, the general master or one to whom the servant has been loaned or hired, has been stated in various ways. The general principles applicable are comparatively simple. The trouble comes in applying those principles to the varying facts of particular cases.

This court, in *Wyllie* v. *Palmer* (137 N. Y. 248, 257), quoted with approval from Shearman and Redfield on The Law of Negligence as follows: " He is to be deemed the master who has the supreme choice, control and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work but in all its details." (Cf. *Cannon* v. *Fargo*, 222 N. Y. 321; *McNamara* v. *Leipzig*, 227 N. Y. 291; *Bartolomeo* v. *Bennett Contracting Co.*, 245 N. Y. 66.)

The *ad hoc* principle has been applied in many cases by this court. An examination of those cases will disclose that the court has consistently enforced the rule that " the servant of one master to become, for the time being, the servant of another must pass out of the direction and control of the former into that of the latter." (*Cannon* v. *Fargo*, *supra*, p. 328.)

Applying those principles to the facts in this case it seems clear that the crane operator at the time of the accident was the servant of the respondent and not the servant of the Kenmore Company. The direction and control remained with the respondent. It had the " supreme choice." The operator of the crane represented its will in the ultimate result of his work and in all of its details. The fact that the employees of the construction company helped in the work and gave directions from time to time as to details did not change the relationship and make the operator of the crane the special servant of the construction company. (*Bartolomeo* v. *Bennett Contracting Co.*, *supra; Standard Oil Co.* v. *Anderson*, 212 U. S. 215.)

While the general principles of law applicable are not seriously questioned by respondent, it is earnestly contended that they are not applicable to the facts in this case as the tariff provision of the Interstate Commerce Commission above quoted, which has the force of law, made the construction company the master of the crane operator at the time and as the duty rested upon the construction company to unload the car, the operator of the crane was engaged in the work of the construction company and not in that of the railroad company.

It is pointed out that the tariff provision made it illegal for the respondent railroad company to do the work of unloading the car and that it must be presumed that it was not engaged in doing an illegal act. It is hard to see the distinction. So far as the legality of its act is concerned, what difference does it make whether we say it was unloading the car itself or that it loaned the crane and its operator to the construction company to do the work? In either case, it retained the absolute control of its machinery and its operator.

The fact is undisputed that the respondent's crane was being operated by its servant over whom it retained complete control. The rule of the Commission cannot change the facts. It would be strange indeed if the respondent, by violating the rule of the Commission could by such violation or by loaning its servant to the construction company change its relation to the employee and make such employee the servant of the construction company without the consent of the servant or of the construction company, either expressed or implied. (*Murray* v. *Union Ry. Co.*, 229 N. Y. 110; *Doran* v. *New York City Interborough Ry. Co.*, 239 N. Y. 448.)

The respondent places its principal reliance upon the case of *Denton* v. *Yazoo & M. V. R. R. Co.* (284 U. S. 305). We do not find anything in that case in conflict with the view which we have expressed. In that case a government postal clerk was injured through the negligence of a

railroad employee while assisting in handling mail. At the time of the accident, the railroad employee was assisting in transferring mail under the direction of a United States postal transfer clerk and was not under the direction or control of the railroad company. A statute and regulation of the Postmaster General required the railroad to furnish men to transfer mail " under the direction of the transfer clerk." The court decided that the work being done at the time was not the work of the railroad company, but the work of the government being done under the supervision and control of the transfer clerk who had power to supervise and control.

The case of *Linstead* v. *Chesapeake & Ohio Ry. Co.* (276 U. S. 28) is to the same effect. The case of *Rockwell* v. *Grand Trunk Western Ry. Co.* (264 Mich. 626) in its facts is very much like the case at bar. In that case a majority of the court reached the conclusion that the servant of the railroad company operating the crane which was being used in unloading steel from a car had become the servant of the consignee of the freight. The decision was based squarely upon the rule of the Interstate Commerce Commission above quoted. The court decided that the defendant railroad company was not unloading the car in violation of the rule of the Commission but that it had loaned its crane and operator to the consignee of the freight. There was a vigorous dissenting opinion, the reasoning of which impresses us as stating the rule more in accord with our own decisions.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to the appellant to abide the event.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN and FINCH, JJ., concur; CROUCH, J., not sitting.

Judgments reversed, etc.