ADOLPH OSBORG, Respondent, *v.* LESLIE HOFFMAN, Appellant.

Second Department, December 10, 1937.

*T. L. Karpf*, for the appellant.

*Benjamin R. Leinhardt*, for the respondent.

ADEL, J.   The question is whether or not defendant is liable for the negligence of another person.   Most of the facts are undisputed.   The defendant owned an automobile.   Plaintiff was a friend of defendant and was an automobile mechanic.   He offered to overhaul defendant's automobile without charge for labor, defendant to pay only for the materials used.   Plaintiff would supply the labor to repay his friend for past favors.   With this understanding, plaintiff took the automobile to a garage at the home of another friend of plaintiff.   There plaintiff worked on the car and was assisted by John Caraian, apparently a husky lad of sixteen years and a nephew of plaintiff's friend, the man who owned the house and garage and with whom John lived.

During the second day of work on the car, plaintiff wanted to start the motor.   He ascertained that the gears were in neutral position; then he asked John to sit in the car and step on the starter button while plaintiff operated the crank at the front of the car. This was done; and while the boy was stepping on the starter and plaintiff was lifting on the crank handle, the automobile jerked forward and plaintiff was caught between the front of the car and the rear wall of the garage.   It was a one-car garage, and apparently the front of the automobile was pointed inward.

Plaintiff sustained personal injuries and has recovered a judgment against the owner of the car on the theory that he was injured by the negligence of defendant's employee.

While the testimony is substantially undisputed, it should be inspected to learn how John was engaged or came to be working with plaintiff on defendant's automobile. The defendant had never seen the boy, never talked with him, and knew of his existence only through plaintiff. The plaintiff testified that John could do the type of work on which he needed assistance, and that John had helped him previously in working on an automobile. When asked how he came on the job, the boy testified: " When he [plaintiff] arrived at the house, as he was a friend of mine and as he had done before, he said, ' Do you want to go to work? ' He just said, ' Come on, John,' and I didn't ask no further questions. I wasn't doing anything at the time, and we went downstairs, and I put on my overalls, and we went to work."

There is testimony that after the first day's work plaintiff and defendant spoke to each other on the telephone and plaintiff asked defendant if he might continue the next day's work with John's assistance; and defendant consented. There was an admission in the answer that the defendant engaged John to render assistance to plaintiff; but the testimony by defendant did not differ in substance from the facts already stated. There is no testimony as to rate of compensation; and it appears that some time after the accident John received a five-dollar money order from the defendant.

So much for the evidence. Probably it would justify a finding that defendant either hired or consented to the hiring of John to assist plaintiff. The record shows that plaintiff has recovered on the theory that John was an employee of defendant, for whose negligence the latter was liable. Under settled definitions we do not believe that the relationship of employer and employee was contemplated between the defendant and John, for the reason that there was no definite contract of hiring and no money rate established. (*Ferro* v. *Sinsheimer Estate, Inc.*, 256 N. Y. 398, 401.) That case deals with the Workmen's Compensation Act, but the opinion shows that as used in the act the terms " employer " and " employee " have their common-law significance. And it is shown that, although there was a direct promise to pay certain sums as gratuities for services, no employer-employee relationship resulted.

However, in the case at bar we do not place our decision on a finding that John was not defendant's employee; nor, on the other hand, does defendant's liability arise merely because John

may have been his employee. The determining element in placing liability for negligence under the doctrine of *respondeat superior* is whether or not the one to be charged controlled the conduct of the wrongdoer.

The matter of control of a servant's acts has long been recognized as an essential consideration in fixing the master's liability for negligence; and that consideration ·is applicable regardless of who pays for the services of the one found to have acted negligently.

In the case at bar it is undisputed that defendant never saw nor spoke to John, and that it was plaintiff who directed John's manner of working, including the manner of performing the very task that resulted in injury to plaintiff. To charge defendant with liability for plaintiff's injuries, under these circumstances, would be to hold him for consequences that he did not have a fair opportunity to avert. In any event, it seems well settled that the master who must respond for a servant's negligence is the one whose will the servant represents, not merely in the ultimate results of his work, but in all its details. (*Ramsey* v. *New York Central R. R. Co.*, 269 N. Y. 219, 224.) The decisive test of a master's liability is not necessarily the payment of wages. (*Muldoon* v. *City Fireproofing Co.*, 134 App. Div. 453; *Baldwin* v. *Abraham*, 57 id. 67.) A servant in the pay of one person may for a period of time be the servant of another in a particular transaction (*Wyllie* v. *Palmer*, 137 N. Y. 248, 257, 258); and this is so even when the general employer may have an interest in the work. (*Wyllie* v. *Palmer, supra; Higgins* v. *Western Union Telegraph Co.*, 156 N. Y. 75.)

In England the rule is similar: " But when one person lends his servant to another for a particular employment, the servant for anything done in that particular employment must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." (*Rourke* v. *White Moss Colliery Co.*, [L. R.] 2 C. P. Div. 205, 209.)

Other expressions of the rule indicating that liability for a servant's negligence attaches to the one who directs the servant's movements are to be found in *Standard Oil Co.* v. *Anderson* (212 U. S. 215); *Schmedes* v. *Deffaa* (153 App. Div. 819; 214 N. Y. 675, decided on the dissenting opinion of MILLER, J.); *Kellogg* v. *Church Charity Foundation* (203 id. 191); *Irwin* v. *Klein* (243 App. Div. 23).

In none of the above-cited cases, and indeed in no case that has come to our notice, are the facts similar to those in the case at bar; but it sufficiently appears that the one who controls the wrongdoer's manner of working is the one liable for the consequences.

How much more applicable that principle seems here, where plaintiff, the one who was injured, directed John's act that resulted in injury, and where plaintiff was the one familiar with the wrongdoer's degree of skill.

There is a minor dispute between the parties as to the legal category into which plaintiff should be placed. Plaintiff contends he was an independent contractor; and defendant contends that, as plaintiff was working without compensation for labor, he was merely a gratuitous volunteer. A resolution of that controversy seems of no importance in deciding this appeal, as it appears affirmatively that defendant was not in control of the acts of the assistant whose conduct resulted in plaintiff's injury.

The judgment should be reversed on the law, with costs, and the complaint dismissed, with costs. The appeal from the order should be dismissed.

HAGARTY, CARSWELL, JOHNSTON and TAYLOR, JJ., concur.

Judgment reversed on the law, with costs, and complaint dismissed, with costs. Appeal from order denying motion to set aside the verdict dismissed.