388 F.2d 480
 Carl F. GRUNENTHAL, Plaintiff-Respondent,
v.
The LONG ISLAND RAIL ROAD COMPANY, Defendant and Third-Party
Plaintiff-Appellant, v. T.F. CONTRACTING CO.,
Inc., Third-Party Defendant-Respondent.
 No. 142, Docket 31491.
 United States Court of Appeals Second Circuit.
 Argued Nov. 8, 1967.
Decided Jan. 11, 1968.
 
 Milford J. Meyer, Philadelphia, Pa. (Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., and Irving Younger, New York City, on the brief), for plaintiff-respondent.
 James T. Gallagher, Jamaica, N.Y. (George M. Onken, Jamaica, N.Y., on the brief), for defendant and third party plaintiff-appellant.
 Thomas F. Cohalan, New York City (MacIntyre, Burke, Smith & Curry, New York City, on the brief), for third-party defendant-respondent.
 Before LUMBARD, Chief Judge, and MEDINA and HAYS, Circuit Judges.
 MEDINA, Circuit Judge:
 
 
 1
 In this FELA action a railroad employee, Carl F. Grunenthal, the acting foreman of a group of men engaged in the removal of a partially buried timber tie on railroad premises in the Queens Village Freight Yard of the Long Island Rail Road, has recovered a verdict of $305,000, the unamended complaint having sought damages in the sum of $250,000. The Railroad asserted a third-party claim against T.F. Contracting Co., Inc. that had for years furnished a boom truck and its driver for the purpose of moving railroad ties under similar conditions. The issue of liability was tried first and the jury found the negligence of the railroad caused the accident, without any contributory negligence by Grunenthal. The issues as between the railroad and the Contracting Company were reserved for later decision by the trial judge; and the second phase of the trial before the same jury resulted in a verdict for Grunenthal as above stated. Finally, the trial judge dismissed the third-party claim. On the railroad's appeal from plaintiff's judgment entered on the verdict we find no error in the conduct of the trial but remand for a new trial unless plaintiff agrees to remit the recovery in excess of $200,000, as the verdict is so grossly excessive as to call into play our power to control excessive verdicts. Dagnello v. Long Island R.R., 289 F.2d 797 (2d Cir. 1961). We affirm the judgment dismissing the third party claim of the Railroad against the Contracting Company. This phase of the case is governed by New York law. Ratigan v. N.Y. Central R.R., 291 F.2d 548 (2d Cir.) cert. denied New York Cent, R. Co. v. Interstate Commodities, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961). The undisputed evidence makes it clear that at all relevant times the Railroad had complete control and direction of the driver and operator of the boom truck and of the entire operation of removing the partially buried timber tie. This is enough to settle the issue as between the Railroad and the Contracting Company. Ramsey v. N.Y. Central R.R., 269 N.Y. 219, 199 N.E. 65, 102 A.L.R. 511 (1935); Irwin v. Klein, 271 N.Y. 477, 3 N.E.2d 601 (1936). Moreover, as held by the trial judge, there is nothing in the record to support a finding of a common law or contractual obligation on the part of the Contracting Company to indemnify the Railroad. Accordingly, we shall make no further reference to this phase of the case.
 
 
 2
 * In the Queens Village Freight yard of the Long Island Rail Road there was a 20 foot embankment below which was an area with parked cars and people moving about. On top of this embankment and a few feet from the edge of the drop there was buried in the ground a 300 pound, 9 foot 6 inch timber tie with approximately 3 feet of the tie sticking out of the ground. The tie had been there for a long time and it had been used to fasten one end of a chain to protect the edge of the embankment.
 
 
 3
 On September 19, 1962 Grunenthal, a railroad trackman, as acting foreman had been given instructions by his superiors to remove the timber tie. The group of men under Grunenthal consisted of Michael Chindamo, a helper, and James Finley, the operator of the boom and the truck. Finley and the truck had been used for railroad work, together with railroad employees, on numerous previous occasions, pursuant to an arrangement with the Contracting Company. The three men were accustomed to work together. The customary way to remove an embedded tie was to slack the cable from the boom, fasten a pair of tongs on the projecting part of the tie, take up the slack on the cable until the teeth of the tongs became fastened on to the projecting part of the tie, then raise the tie until it was fully clear of the ground. This was step one of the customary procedure and all the witnesses agree that so far the operation proceeded without any unusual incident. The next step was to lower the cable so the tie could rest flat on the ground and give Grunenthal an opportunity to move the tongs over to the mid-section of the timber so that it would balance itself and facilitate the final movement of lifting the tie and placing it on the truck. Grunenthal testified that, after the timber tie was clear of the ground Finley kept lifting it higher instead of lowering it to the ground. As it went higher in disregard of Grunenthal's signal to stop, the unevenly balanced timber tie started to twist about in an eccentric manner and bumped against the side of the truck. As Grunenthal was endeavoring to control the timber tie as it flailed about, the teeth of the tongs lost their grip and the timber tie fell on Grunenthal's foot. The whole operation was necessarily conducted close to the edge of the embankment and whether Grunenthal's efforts to control the tie and to prevent possible injury to those below the embankment did or did not amount to contributory negligence was clearly a question of fact for the jury. For the same reason we must reject the Railroad's claim of contributory negligence in Grunenthal's failure to give the signal to stop by a movement of his arm at the height of his hip, according to Rule 3405 of the Railroad's Book of Rules. The jury were justified in believing Grunenthal's testimony that taking into account the relative positions of Grunenthal and Finley it was necessary to give the signal chest high to make it visible to Finley.
 
 
 4
 There was ample proof to sustain the verdict on the subject of liability without taking into account the favored position of plaintiffs in FELA cases. See Basham v. Pennsylvania R.R., 372 U.S. 699, 83 S.Ct. 965, 10 L.Ed.2d 80 (1963); Rogers v. Missouri Pacific R.R., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); McCann v. Smith, 370 F.2d 323 (2d Cir. 1966).
 
 
 5
 The railroad also seeks a reversal, however, on the basis of an incident in a recess period during the trial. This occurred after Grunenthal had given his testimony concerning the falling of the timber tie. Grunenthal, again on the witness stand, said that Finley had come up to him and his wife and told them the accident happened just exactly as Grunenthal had testified. Finley denied he made this statement but admitted he talked with the Grunenthals 'about the time we worked together.' Finley did not dispute Grunenthal's statement that he was the one who started the conversation. We find nothing improper in Grunenthal's conduct. The motion for a mistrial was properly denied and we approve all the other rulings by the trial judge relative to this trivial occurrence.
 
 
 6
 A further contention by the Railroad, more or less connected with the incident just described, is that as Finley was impeached by the testimony of the Grunenthals to the effect that he had made a statement contradictory to his testimony on direct examination, it was error to refuse to admit into evidence a written statement by Finley long prior to the trial to the same effect as his testimony on direct examination. There was no error in ruling out the prior consistent statement. This is a perfect example of the common, garden variety of situation where the general rule excluding prior consistent statements should be applied. Clearly there was no abuse of discretion. Finley's motive at the time he signed written statement, and at the time he testified on direct examination, and at the time he denied on cross-examination that he told the Grunenthals what they said he told them, was the same, namely to exonerate himself from blame for the accident. If prior consistent statements were received in evidence under these circumstances the basic facts would be buried in the confusion caused by the trial of collateral issues. See Alexander v. Kramer Bros. Freight Lines, Inc., 273 F.2d 373 (2d Cir. 1959); Ryan v. United Parcel Service, Inc., 205 F.2d 362 (2d Cir. 1953).
 
 
 7
 We have examined with care the other points made on behalf of the Railroad and find none worthy of further discussion. Contentions by the Contracting Company are passed over without comment in view of our ruling that the third party claim was properly dismised.
 
 II
 
 8
 The amount of the verdict is so grossly excessive as to affect the entire case and require a new trial unless Grunenthal agrees within a reasonable time to remit so much of the recovery as exceeds $200,000. We apply the teaching of Dagnello v. Long Island R.R., 289 F.2d 797 (2d Cir. 1961) and hold that it would be a denial of justice to permit this verdict to stand.
 
 
 9
 In his enthusiasm for what he described to the jury after the verdict as their fine 'spirit' and 'dedication' and 'with resounding emphasis in plaintiff's favor all down the line' the trial judge, we think, supplied any 'absence of exaggeration' in plaintiff's testimony by doing a little exaggerating himself, as appears in the quotations cited in the dissent.
 
 
 10
 The complaint demanded a recovery of $250,000. There was no request for an amendment of the ad damnum clause during the trial, no gross amounts or other indications of a possible recovery in excess of $250,000 were expressed in the summation of Grunenthal's counsel or by the trial judge in his instructions to the jury. While the cases in this Circuit indicate that an award in excess of that prayed for in plaintiff's complaint will not necessarily be set aside on that account, Riggs, Ferris & Geer v. Lillibridge, 316 F.2d 60 (2d Cir. 1963); Farmer v. Arabian American Oil Co., 285 F.2d 720 (2d Cir. 1960); Couto v. United Fruit Co., 203 F.2d 456 (2d Cir. 1953), we think, against the background of the facts of this particular case, the failure to ask for damages in such a large sum as $305,000 is not without some significance.
 
 
 11
 Grunenthal was a track worker assigned as acting foreman to the task of directing the removal of the timber tie. He was 45 at the time of the trial, with a life expectancy of 27 years. He had worked as a laborer or trackman for the Railroad during his entire mature life and was receiving, inculding overtime from $5600 to $6000 a year.
 
 
 12
 His right foot was crushed by the impact of the heavy timber tie. The compound fracture involved the instep, the great toe joint and the second metatarsal. He was hospitalized on five separate occasions covering a total of 78 days between September 1962 and June 1964. There were several operations, including one of skin grafting and another 'right sympathectomy.' At one time there was danger that gangrene would develop. During all this period Grunenthal suffered much pain and a dull pain continued up to the time of the trial. While Grunenthal is able to walk his movement is greatly impaired as he is unable to place any weight on the inner portion of his right foot. He is not totally disabled and the testimony of his expert witness indicates he can engage in 'sedentary type work.' Grunenthal said his efforts for permanent employment up to the time of the trial had been unavailing and he was then engaged in part time work as a custodian.
 
 
 13
 The instructions to the jury properly allowed a recovery for the loss of past earnings, the loss of future earnings, pain and suffering and inconvenience including 'the effect of his injuries upon the normal pursuits and pleasures of life.' This was Grunenthal's due. But, giving Grunenthal the benefit of every doubt, and weighing the evidence precisely in the same manner as we did in Dagnello, where the large sum allowed was found not to be excessive, we cannot in any rational manner consistent with the evidence arrive at a sum in excess of $200,000.
 
 
 14
 It is futile to attempt a catalogue of instances where under more or less similar circumstances the judges in this Circuit and this Court itself have directed a new trial in personal injury cases unless plaintiff agreed to remit the excess of the recovery over a sum fixed by the judge or by this Court. Each case must stand on its own particular facts.
 
 
 15
 Affirmed on the dismissal of the third party claim against the Contracting Company. On the appeal of the Railroad from the judgment entered on the verdict of $305,000, the case is remanded to the District Court for a new trial unless plaintiff agrees within thirty days from the filing of this opinion to remit such part of the recovery as exceeds $200,000. If plaintiff accepts the remittitur the judgment in his favor against the Railroad is affirmed.
 
 HAYS, Circuit Judge (dissenting in part):
 
 16
 I dissent from the decision to grant defendant a new trial unless plaintiff remits $105,000 of the amount awarded him by the jury.
 
 
 17
 Plaintiff's evidence as to his injury is uncontradicted. The foreparts of his right foot including the great toe joint and the second metatarsal were crushed and shattered by the 300 pound tie falling from a height of five feet. He was treated in hospitals for more than nine weeks and underwent five serious operations on the foot. He suffered great pain in his foot at all times since the accident and will continue to suffer pain unless the foot is amputated. Because of the inadequacy of the blood supply resulting from the injury, there is constant danger of infection. Plaintiff cannot now bear weight on the foot nor will the condition of the foot improve in this respect in the future. He is severely limited in the kind of work he can do and clearly will never be able to return to his former employment.
 
 
 18
 The trial judge, who was surely in a better position to weigh the evidence than we are, referred to 'the total absence of exaggeration' in plaintiff's testimony describing 'the excruciating physical pain and mental anguish' he has endured since the accident. 'On the record here,' said the trial judge, 'it (the jury) had good and sufficient reason to regard and assess (the plaintiff's pain and suffering-- past and future) as excruciating, deep-seated, unrelenting and debilitating-- the inducing cause of his constant misery.' Of the jury's award the trial court said, 'We found nothing untoward, inordinate, unreasonable or outrageous-- nothing indicative of a runaway jury or one that lost its head.'
 
 
 19
 While I have no doubt that we have the power to order remittitur, we should use that power sparingly indeed. We are not justified in substituting our opinion for the verdict of the jury except in the most extreme case.
 
 
 20
 'It is well established, however, that when an appellant seeks a new trial because the verdict was excessive, the grounds for setting aside a denial of such a motion are quite narrow. If the 'action of the trial court * * * (is) not without support in the record * * * its action should not * * * (be) disturbed by the Court of Appeals.' Neese v. Southern Ry. Co., (350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955)). And this Court has held that a new trial should not be ordered unless there has been 'an abuse of discretion' and the verdict 'is so high that it would be a denial of justice to permit it to stand.' Dagnello v. Long Is. R.R. Co., supra, 289 F.2d at 806. Accord, Diapulse Corp. of America v. Birtcher Corp., 362 F.2d 736 (2d Cir.) cert. dismissed, 385 U.S. 801, 87 S.Ct. 9, 17 L.Ed.2d 9 (1966); La France v. New York, N.H. & H. R.R. Co., 292 F.2d 649, 650 (2d Cir. 1961) (verdict will not be modified unless 'fantastic'); Wooley v. Great Atl. & Pac. Tea Co., 281 F.2d 78, 80 (3d Cir. 1960) (verdict not to be disturbed unless 'so grossly excessive as to shock the judicial conscience' so that it would be a 'manifest abuse of discretion' not to order a new trial).' Caskey v. Village of Wayland, 375 F.2d 1004, 1007 (2d Cir. 1967).
 
 
 21
 Nor is it amiss, in view of the preferred position to which jury verdicts are entitled in cases under the Federal Employers' Liability Act, to point out that in no previous case arising under that Act has our circuit ordered remittitur on the ground of excessiveness of the verdict. In Dagnello v. Long Island R.R. Co., 289 F.2d 797 (2d Cir. 1961), on which the majority seeks to rely, the court in fact refused to order remittitur and in Hill v. Long Island R.R. Co., 257 F.2d 736 (2d Cir. 1958), remittitur was ordered because of an ambiguity in the jury's verdict and not because the verdict was excessive.
 
 
 22
 It is to be hoped that the disregard by the majority in this case for the integrity of the jury's verdict will not be taken by the district courts to justify a widespread increase in the use of remittitur.