# Murray and Campbellsville & Greensburg Telephone Company v. Cowherd.

(Decided May, 29, 1912.)

## Appeal from Taylor Circuit Court.

1. Master and Servant—Falling Telephone Pole—Injury to One on Highway—Negligence.—Appellee while driving along a public highway was knocked from his wagon by a falling telephone and injured. In an action by him against the president of the telephone company and the company, following a judgment against them of which no substantial complaint is made by the company, the president of the company, upon appeal, takes the position that at most his negligence was that of nonfeasance, and that a servant is not liable for an injury resulting alone from his non-activity. Held, That the distinction sought to be drawn between a servant's acts of misfeasance and those of nonfeasance, resulting in an injury to another, with his consequent liability in the one case, and his non-liability in the other, does not obtain in Kentucky, when the negligence, whether of misfeasance or nonfeasance, involves some breach of the servant's duty. It is not his position of service, but his relation as an individual wrongdoer to the party injured which fixes his liability.

2. Same—Liability for Injury.—It was the duty of Murray to inspect and maintain the line. For his negligent failure to discharge this duty, whether it be called misfeasance or nonfeasance, liability attaches to him in favor of one injured by it.

3. Verdict—Finding Against Joint Defendants.—There is not much force in the argument that the verdict is lacking in definiteness as it does not state whether it is against both, or a particular defendant. The jury were told that they might find against one or both, and if they found against both they might find one sum against one, and a different sum against the other. Obviously, they did not find against one and in favor of the other, nor a part of the damage against one and a part against the other, because they made no such statement in their verdict.

HELM BRUCE, JOHN A. WOLFORD and BRUCE & BULLITT for appellants.

W. C. McCHORD, W. M. JACKSON for appellee.

Opinion of the Court by Judge Winn—Affirming.

The Campbellsville & Greensburg Telephone Company is a corporation with its poles and line extending along the turnpike between the two towns. G. V. Murray is its president and general manager. On April 1, 1911, W. T. Cowherd was knocked from his farm wagon,

which he was driving along the road, by a telephone pole which fell over upon him. He was partially paralyzed by the accident and suffered no little, both bodily and pecuniarily. He brought his action against the appellants for damage, and upon a trial recovered a judgment of $2,875, from which this appeal is prosecuted.

The petition charges the negligence of the company in maintaining the decayed pole; that Murray had charge of, and direct supervision over, the construction and maintenance of these poles and wires; that it was his duty to keep and maintain them in good repair and safe condition; that the defendant's negligence permitted this particular pole to become out of repair and unsafe, and to remain so for an unreasonable length of time. There is then a specific charge that Murray inspected the pole which fell upon Cowherd, but that he was negligent and careless in his inspection and approved the pole as being safe when it was not so. The evidence discloses that Murray customarily discharged the duties of inspection and maintenance, and when an inspection disclosed the unsound condition of a pole he would cause it to be broken out and reset. He was the president and general manager of the company and doubtless had at command its supplies without the formality of application to any superior to furnish them. There was further evidence before the jury that he inspected that particular pole one week before it fell; that the decayed condition could have been seen had he gone to it and looked at the foot of it; that on the day when he did inspect it his presence there was occasioned by the fact that the pole next in line to it, and across the turnpike from it, had fallen, and he had gone there to reset that pole; that after resetting it he inspected the poles immediately on both sides of it in the line to see whether or not they had been affected by the falling and resetting of that pole.

No substantial complaint of the verdict and judgment is made by the telephone company. The reversal is urged in behalf of Murray. He takes the position that at the most his negligence was that of nonfeasance, the failure to inspect the pole properly, and that a servant is not liable for an injury resulting alone from his nonactivity; that his duty was a duty which he owed alone to his employer, the telephone company, and that if he failed to perform this duty of inspection he is answerable alone to the company, his superior and employer.

The distinction sought to be drawn between a servant's acts of misfeasance and those of nonfeasance, resulting in an injury to another, with his consequent liability in the one case and his non-liability in the other, does not obtain in Kentucky, when the negligence, whether of misfeasance or nonfeasance, involves some breach of the servant's duty. It is not his position of service, but his relation as an individual wrongdoer to the party injured, which fixes his liability. Haynes' Admrs. v. C., N. O. & T. P. Railroad Co., et al., 145 Ky., 209. Certainly under the particular facts of the case at bar the distinction is immaterial; for, under the evidence supra, the pole was decayed and a menace to the travelers upon the highway. The defect could have been discovered by an inspection. It was the duty of Murray to inspect and maintain the line. He owed such travelers an affirmative duty in the exercise of reasonable care to inspect and maintain this pole in safety. For his negligent failure to discharge this duty, whether it be called misfeasance or nonfeasance, liability attaches to him in favor of one injured by it.

While, as remarked above, the doctrine is settled in this State that the servant is personally liable, whether his act be that of misfeasance or nonfeasance, when the injury flows from some breach of a duty owed by him, there are none the less certain points made in the able brief for the appellants which need to be answered, and certain authorities cited which need to be discussed and differentiated, in order that no misapprehension of our position may grow up.

The first case cited by appellants is that of C., N. O. & T. P. Ry. Co. v. Robertson, 115 Ky., 858, a removal case. In this case Brown, the resident defendant, according to the allegation of the petition, was required by the railway company to see that mechanical appliances of a certain nature were supplied on the engines. Those supplied were not of that nature. It was not charged that the master had supplied Brown with different or better appliances. The engineer was injured by a defect in such an appliance. Upon the trial it was developed that Brown furnished to the engineer precisely the same appliances that were supplied to him by the railway company; and the case turned upon the question as to whether a servant can be made liable to an inferior servant because of the master's failure to provide safe and suitable machinery, although it was the superior

servant's duty to look after the machinery. It was answered that such a liability would attach; but that where the injury resulted to some third person because the servant failed to act, the servant, upon general authority, was not personally liable. The court added, as to this general doctrine, that it was not prepared to say that it could be sustained in sound reason to its fullest extent, and that the facts in that case relieved the court from considering whether mere nonfeasance upon the part of Brown would have rendered him liable. When the court came at a later time to try the Haynes case, it departed from the suggestion made in the Robertson case; and held that where the injury resulted from a failure to discharge a duty, whether of misfeasance or nonfeasance, the servant himself would be liable. In the Robertson case it is to be noted that Brown was an inferior servant of the company, and though charged with the duty of inspection, was supplied with no other or different or better appliances than those which caused the injury; while in the case at bar there is a pregnant difference in that Murray himself testifies that whenever his inspection disclosed a bad pole he would have it taken out and the pole reset. In other words, he had good appliances at command to supplant the defective ones which his inspection might discover.

The next case cited is that of Dudley v. I. C. Railroad Co., 127 Ky., 221, another removal case. A brakeman on the railroad was struck by a water-spout leading from a supply tank out over the track to supply locomotives with water. He sued the company and joined with it as a defendant one Mitchell, charging that he was its superintendent or supervisor of pumps, tanks and water appliances, and that he was directly in charge and control of the particular tank and spout which caused the injury. This court held that the petition stated a good cause of action against him, and that the trial court properly overruled the petition for removal at the beginning of the action. The evidence, however, disclosed that Mitchell was a subordinate employe of the railroad company, working under the superintendent, who had charge of the pumps and tanks. The court remarked that though it be assumed that it was Mitchell's duty to keep the tanks and appliances in repair, he could not be held liable, unless such a servant as he was is liable for nonfeasance, or for his failure affirmatively to take some action to remedy defects or dangerous appliances to which his

attention might be called. This language is misleading, standing alone; and it must be read in connection with the further facts in the case that Mitchell had nothing to do with erecting the tank, or adjusting any of the parts or appliances thereon; and that the evidence wholly failed to make out any case against Mitchell. We undertake to say that the case would have been ruled otherwise had the evidence disclosed that it was Mitchell's duty to inspect and maintain these appliances, and to take out defective and from a store at his command supply sound apparatus. Undoubtedly, had he failed in such a duty, though his failure were purely nonfeasance, he would have been personally liable—just as, in the case at bar, it was the duty of Murray to maintain sound poles and to take out defective ones, replacing them with sound ones, as he was in the habit of doing.

The next case is that of Ward v. Pullman Co., 131 Ky., 142, which is cited by the appellants, not by way of sustaining their position, but for the purpose of endeavoring to explain away statements in its text which are against their position. This case as well was a removal case. In it we have before us alone the allegations of the petition. The lower court sustained the removal petition and removed the case to the Federal Court; and the case that came to us was on appeal from that order. The case was decided here upon the allegations of the petition as to the individual defendants, Drayman and Glenn. It was charged that they were car inspectors in the employment of the C., N. O. & T. P. Ry. Co., and that as such it was their duty to examine and inspect freight cars to ascertain whether they were safe to be operated by the trainmen in the employment of the railroad. It was further charged that they had carelessly inspected a particular car and approved it, when, as a matter of fact, it was defective, and injured the plaintiff. The question was whether a cause of action was stated against the individuals. The opinion remarks the above set out excerpt from the case of C., N. O. & T. P. Ry. Co. v. Robertson, 115 Ky., 861, and that from Dudley v. I. C. Railroad Co., 127 Ky., 221. The opinion then added that "there is a sharp conflict in the authorities as to whether a servant is liable to a third person for nonfeasance, and as to what is nonfeasance with the meaning of the rule." It was added that it was not necessary in the Ward case to decide the true rule because the act of Drayman and Glenn were more than

those of mere nonfeasance; that their approval sent the
car out on the road, an affirmative act for which they
were liable, as the car was defective in a way which
could have been discovered by ordinary care.

The cases of I. C. Railroad Co. v. Coley, 121 Ky.,
385, and C. & O. Ry. Co. v. Banks' Admr., 144 Ky., 437,
were both cases of affirmative or active negligence
wherein servants of the railroad company were operat-
ing their engines without due precaution to the travel-
ing public. Both of these cases are cited by the appel-
lants, but they are not especially in point here.

The next case cited by appellants is that of Haynes'
Admrs. v. C., N. O. & T. P. Ry. Co., 145 Ky., 209. This
also was a removal case. In it, for the first time, this,
court met and answered directly the supposed distinction
between negligence of misfeasance and negligence of
nonfeasance of a servant in the discharge of an imposed
duty, as affecting his liability for injury resulting from
his negligence. We quote at length from the opinion in
the Haynes case, because it is a clear statement of an es-
tablished view of the court to which we desire to adhere:

" 'Misfeasance is the performance of an act which
might lawfully be done in an improper manner, by which
another person receives an injury,' while 'nonfeasance
is the nonperformance of some act which ought to be
performed.' Bouvier's Law Dictionary. If the acci-
dent had been caused by either misfeasance or nonfeas-
ance amounting to a breach of duty on the part of the
engineer, we would hold him liable. In some jurisdic-
tions the servant is not held accountable to third per-
sons for nonfeasance, but is for misfeasance; but a con-
trary rule and one that is in accord with the weight of
modern authority prevails in this State. We do not
recognize any distinction so far as the accountability
of the servant is concerned between acts of misfeasance
and nonfeasance. Ward v. Pullman Co., 131 Ky., 142,
25 L. R. A., n. s., 343; C. & O. Ry. Co. v. Banks, 144 Ky.,
137; Illinois Central R. R. Co. v. Coley, 131 Ky., 385, 1 L.
R. A., n. s., 370. If a servant performs in an unlawful
manner an act that results in injury to a third person,
or if a servant fails to observe a duty that he owes to
third persons, and injury results from his fault of com-
mission or omission, he is liable in damages. There is
no reason for making a distinction between acts of com-
mission and omission when each involves a breach of
duty. The servant is not personally liable in either case

because the breach of duty was committed by him while acting in the capacity of servant, but responsibility attaches to him as an individual wrongdoer without respect to the position in which he acts or the relation he bears to some other person. It is the fact that the servant is guilty of a wrongful or negligent act amounting to a breach of duty that he owes to the injured person that makes him liable. It is not at all material whether his wrongful or negligent act is committed in an affirmative or wilful manner, or results from mere non-attention to a duty that he owes to third persons, and that it is entirely within his power to perform or omit to perform. There are innumerable situations and conditions presented in the every day affairs of life that make it the duty of persons to so act as not to harm others, and when any person, whatever his position or relation in life may be, fails from negligence, inattention or wilfulness to perform the duty imposed, he will be liable.''

It is true that in the Haynes case the engineer was held not liable; but it was because the injury there was the result of defective machinery supplied by the master, in the selection of which the engineer had neither the right nor the duty to dictate to the master. It was very well said that when such things are furnished by the master and prove defective or unsafe, the liability attaches to the master and not to the servant; and that it would be a most unreasonable doctrine to hold a person responsible for defects in machinery that he was merely employed to use under the direction of a superior, who possessed the exclusive right to furnish the tools or machinery used by him. This is a just and wise statement of what reason and justice would suggest as the fair rule. The negro man, for instance, who accompanied Murray in his inspection trips and assisted in taking out and putting in poles and other repair work with material and tools furnished alone by the master, would not be liable, because of defects in either, for injuries occurring because of the defects. Murray, however, stands in an altogether different position. He was the president and general manager of the telephone company. He, therefore, had control of its supplies. It was his duty to inspect and to maintain the poles in a sound condition, a duty which, according to some of the evidence, he did not discharge in this particular instance. He says as well that when he found a pole unsafe he would break it off and reset it, a course which he un-

doubtedly could have followed with this particular pole, whether or not he had a new one at command to replace it. Under the facts stated, the quotation from the Haynes case clearly fixes the personal liability of Murray.

Some effort is made in the brief of appellants to weaken as authority here these removal cases because their discussion of the servant's liability is only in their aspect toward the right of removal to the Federal Court. It is difficult to conceive any manner of case which would present a more clear-cut opportunity to pass on such liability. If there was such liability of the resident servant, there was no right of removal in the non-resident corporation. If the resident servant were not liable, the non-resident corporation had the right of removal. In the determination, therefore, of the right of removal it was necessary to consider in each case most carefully the rules fixing or denying the servant's liability; and these removal cases are, therefore, entitled to the highest consideration.

The only other point suggested by the appellants is that the verdict of the jury is not sufficiently definite and certain, in that it merely found for the plaintiff, without stating as to whether it found against both or some particular one of the defendants. There is not much force, we think, in this position. The court instructed the jury that they might find against either or both the defendants, and that if they found against both they might find one sum against one and a different sum against the other, "in which event they must state in their verdict how much they find against one and how much against the other." The jury obviously did not find in favor of one and against the other, nor a part of the damages against the one and a part against the other, because they made no such statement in their verdict. Interpreted in the light of the record there is no difficulty in ascertaining what the jury meant.

The judgment of the trial court is affirmed.