# Newport Coal Co. et al. v. Ziegler.

(Decided· May 22, 1934.)

BENTON, BENTON, SMITH & LUEDEKE for appellants.

CHARLES E. LESTER, Jr., and BLAINE McLAUGHLIN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

James C. Macht, residing at Fort Thomas, Ky., was a dealer in building supplies, engaged in business at Newport and Erlanger, Ky., under the name of the Newport Coal Company. He began business in 1906 and continued until the first part of the year 1931. He carried accounts with the Central Savings Bank, Erlanger Bank, Florence Bank, Burlington Bank, Newport National Bank, and other banks in that section. He was indebted to the Newport National Bank between $28,000 and $30,000, evidenced by notes signed by the Newport Coal Company, and James C. Macht and John Macht, the father of James C. Macht, sureties. One or more of the notes were secured by mortgages. John Macht was a man of considerable means with credit. James C. Macht's credit and means were limited.

Walter U. Ziegler, from July, 1921, until February, 1931, was bookkeeper in charge of the books and business of the Newport Coal Company and superintended its business.

The notes of the Newport Coal Company had been carried by the Newport National Bank for a number of years; Ziegler, the greater portion of the time, attended to the renewing of them. The renewals would be signed in blank by James C. Macht, for the Newport Coal Company and himself, individually, and by John Macht; later filled out, sometimes by Ziegler or James C. Macht, or a Mr. Scott, and delivered to the bank. The company was continuously short of cash and credit. About August 1, 1928, a lot of bills matured and had to be paid; the business had no cash with which to meet bills; its credit was insufficient to enable it to obtain a loan at the bank; Ziegler endeavored to obtain at the Newport National Bank, a loan of $2,500 to $3,000, but failed. Not only were current bills maturing, but the company was having trouble to meet its pay roll. To alleviate the impending condition, Ziegler induced his wife to loan the company $2,500. It was obtained from her for use for only a short period of time. He prepared a note to be signed by the Newport Coal Company, James C. Macht, and John Macht, the latter two as sureties, payable to Martha Lee Ziegler, which they admit was actually signed by them. In doing so, he used one of the forms it had been the custom to use when obtaining a loan from the Newport National Bank; a line was run through the name of the bank and the name ''Martha Lee Ziegler'' written therein. Also there were stricken from the form of the note, the words ''after date we jointly and severally promise to pay to the Newport National Bank of Newport, Kentucky or order.'' It was then signed ''Newport Coal Company by James C. Macht, James C. Macht, individually, and John Macht.'' When the form was so changed and executed it read:

''Newport, Kentucky, August 1, 1928.
''$2,500.00

''On demand we jointly and severally promise to pay to Martha Lee Ziegler, of Newport, Kentucky, or order Twenty-Five Hundred and no/100 Dollars, negotiable and payable at Newport National Bank, Newport, Kentucky, for value received; with interest at 6% per annum.

''Newport Coal Company
''By James C. Macht
''James C. Macht
''John Macht.''

The $2,500, for which the note was executed, was received by Walter U. Ziegler, deposited in bank in his name; a check was signed by him, payable to the Newport Coal Company, which was deposited in the name of Newport Coal Company and used by it in its business. An entry was made on the books of the company showing it received the $2,500.

The Newport Coal Company later failed, leaving the $2,500 note unpaid to Martha Lee Ziegler. This action was instituted to recover it of the Newport Coal Company, James C. Macht, and John Macht.

To escape payment, James C. Macht and John Macht, by separate answers, admitting the genuineness of the signatures to the note, pleaded it was blank when signed by them, and, after it was so signed, Walter U. Ziegler, without their knowledge or consent, materially changed it by striking from its face the words "after date we jointly and severally promise to pay to the Newport National Bank, of Newport, Kentucky, or order," inserted therein the name "Martha Lee Ziegler," and then delivered the note to her and that she had knowledge before or at the time of its delivery of the act of her husband in so changing the words of the note, and the name of the payee. With a traverse of their defense, the case was submitted for trial before a jury, which resulted in a verdict in favor of Martha Lee Ziegler. The facts pleaded, if proven, constitute a defense within the terms of section 3720b-124, 3720b-125, Ky. Stats.

James C. Macht substantially admitted in his testimony that he did not know whether the form of the note was changed before or after it was signed by himself and father. He states that notes were habitually signed in blank and filled out by others, then delivered to the payees. James C. Macht devoted but little of his time looking after the cash, the notes, and renewals thereof, and left such transactions to Ziegler. He admitted the Newport Coal Company received and used the $2,500 and that an entry thereof was made on the books.

John Macht admitted that he regularly and without giving them any attention, signed original and renewal notes in blank and did so promiscuously and turned them over to the employees of the Newport Coal Company to be filled out and delivered to the payees. If the

form of the note was changed before he signed it, he did not observe the change at the time he signed it.

Walter U. Ziegler accurately detailed the borrowing of the $2,500, the changing the form of, and filling, the blank note so as to make it payable to Martha Lee Ziegler; the signing of it after the form was changed by him, by James C. Macht for the Newport Coal Company, and individually by John Macht, and the delivery of the note to his wife. His testimony that the alteration of the form of the note before it was signed and delivered, as explained by Walter U. Ziegler, was satisfactory to the jury. His testimony in this respect is without contradiction. It is corroborated by the note itself, the check, and the books of the Newport Coal Company. If the testimony of James C. Macht and John Macht is accepted as correct, it in no wise contradicts that of Walter U. Ziegler, but at most it evinces their lack of knowledge of facts necessary to sustain their defense.

During the progress of the trial in the presence of the court and jury, their counsel made this statement:

"Counsel for defendants admits that Walter U. Ziegler issued a check on the first day of August or the last day of July 1928 made payable to the Newport Coal Company and that that check was deposited in the Newport National Bank in the name of the Newport Coal Company; that Martha Lee Ziegler drew $2,500.00 out of the National Loan and Building Association, transferred it to the account of her husband and the $2,500.00 check was deposited to the credit of the Newport Coal Company in the Newport National Bank."

With the testimony of the witnesses considered in connection therewith, it is not doubtful the court properly submitted the case to the jury, and the evidence abundantly sustains its verdict.

The verdict of the jury is in these words:

"We, the jury, find for the plaintiff the sum of $2,500.00 with interest at 6% thereon from August 1st, 1928."

The Machts contend the form of the verdict is insufficient to support the judgment. They argue:

"Separate answers were filed by the defendants, each denying for himself that he signed the note in

its form sued on. * * * The pleadings in the case, as well as the instructions of the court, authorized the jury to find a verdict against one or both defendants or against neither defendant. * * *''

The same criticism of a verdict, and the argument to sustain it, were considered by this court in Murray & C. & G. Tel. Co. v. Cowherd, 148 Ky. 591, 147 S. W. 6, 9, 40 L. R. A. (N. S.) 617. Disposing of the same, we used this language:

''The only other point suggested by the appellants is that the verdict of the jury is not sufficiently definite and certain, in that it merely found for the plaintiff, without stating as to whether it found against both or some particular one of the defendants. There is not much force, we think, in this position. The court instructed the jury that they might find against either or both the defendants, and that if they found against both they might find one sum against one and a different sum against the other, 'in which event they must state in their verdict how much they find against one and how much against the other.' The jury obviously did not find in favor of one and against the other, nor a part of the damage against the one and a part against the other, because they made no such statement in their verdict. Interpreted in the light of the record, there is no difficulty in ascertaining what the jury meant.''

To the same effect, see, also, Cincinnati, N. O. & T. P. R. Co. v. Silvers (Ky.) 126 S. W. 120.

As was said by this court in Pittsburg, C., C. & St. L. R. Co. v. Darlington's Adm'r, 129 Ky. 266, 111 S. W. 360, 361, 33 Ky. Law Rep. 818:

''Jurors are gathered from every walk of life. Very frequently, perhaps most generally, they are not men of literary learning. Their choice of expressions is very apt to be not exact; their verdicts being frequently ungrammatical and rarely couched in the terminology of the law. Hence courts view the findings of the jury with great leniency, and every reasonable presumption is indulged in aid of a general verdict. The main thing is to get an understanding of what the jury intended. Their

intent is to be sought for in the language they used in their verdict, interpreted in the light of the record. Resort may be had to the pleadings or other parts of the record to see what the jury meant by their verdict.''

The Machts, on the jury's reading the verdict in court, interposed no objection to its phraseology nor entered a motion to make it more specific. The prevailing rule is that a verdict merely irregular is sufficient in the absence of an objection to make it more specific if it shows that the jury expressed its opinion upon the issues. The verdict of the jury in the pending case conforms to this principle. Davis v. Stone, 172 Ky. 696, 189 S. W. 937.

In the light of the evidence and the pleadings of the parties, the trial court correctly construed the verdict to include James C. Macht and John Macht and the Newport Coal Company, in the absence of any expression to the contrary in the verdict itself.

Wherefore, the judgment is affirmed.