# Louisville & N. R. Co. et al. v. Farney.

March 19, 1943.

As Modified on Denial of Rehearing

June 25, 1943.

H. T. Lively and Rouse, Price & Adams for appellants.

Johnst Northcutt and Northcutt & Northcutt for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Appellee, a fifteen year old high school student, was struck by a slowly backing freight train in front of which he fell while walking southwardly on a path adjacent to the tracks on the right-of-way of the Louisville & Nashville Railroad in Covington, or, as claimed by the Company, while attempting to cross the tracks from west to east at a point within from three to fifteen feet of the approaching caboose. The accident occurred in the afternoon; appellee had seen the train 150 feet away and crossed in front of it from east to west before turning south, the direction in which the train was traveling; and the only issue which the Court submitted to the jury was whether the train crew, after discovering appellee's position of peril, could have avoided striking him by the exercise of ordinary care and the use of the means at their command.

On the question of negligence it is argued for appellee that since the train was from 125 to 150 feet behind him when he crossed the tracks and turned south, it presumably maintained that distance since it was moving at a speed of about five miles an hour, and hence when appellee had a "falling sensation" and fell, it could have been stopped in time (within 10 or 12 feet according to his experts) to have avoided injuring him. We are inclined to the belief that his uncorroborated testimony failed to show actionable negligence on the part of the train crew, who, though aware of appellee's presence beside the track, had no reason to anticipate his fall, and, by means of an angle cock in the caboose, stopped the train as soon as it could have been stopped by any agency

at their command. If, as testified to by them and several apparently disinterested witnesses, appellee turned and attempted to run across the tracks immediately in front of the train and stumbled and fell in so doing, he was guilty of contributory negligence. But it is unnecessary to subject the evidence to minute scrutiny in order to determine with certainty the correctness of these propositions unless we can answer in the negative appellants' assertion that the jury's verdict, although it awarded appellee $5,500 in damages, relieved them from liability.

The action was originally instituted against the Louisville & Nashville Railroad Company alone, and the negligence charged was that ''the defendant, its agents and servants, in charge of operating and moving a train or locomotive with freight cars attached thereto * * * with gross and wanton carelessness and negligence, ran, operated and directed said train or locomotive and cars into, against, upon and over'' the appellee while he was ''crossing said tracks and walking over the path or tracks along and adjacent to the defendant's line of railroad.'' It was also alleged that at the point where the injury was sustained it had long been the custom and practice of persons traveling on foot to walk across, along, and over the tracks. By an amended petition the train crew, including the engineer and fireman, and the appellants, Jones, Newcomb, and Fey, trainmen, were made parties defendant upon the allegation that they were in charge of the train which struck appellee; that at the time of the accident they were engaged in the discharge of their duties as agents, servants, and employees of the Railroad Company, and that appellee's injuries were caused by ''the combined and concurring negligence of said employees and their co-defendant, the Louisville & Nashville Railroad Company,'' as set out in the original petition. Prior to the filing of this amendment, the Railroad Company had answered, denying the allegations of the petition and pleading contributory negligence. The employees answered, admitting that they constituted the crew in charge of the train, and adopted the Company's answer. Thereafter, they traversed the allegations of the petition, affirmatively pleaded contributory negligence, and the issues were eventually joined by an agreed order traversing the affirmative allegations of the several answers. At the conclusion of the testimony the appellee dismissed the action as to the engineer

and fireman, and the Court instructed the jury as follows:

"The Jury is instructed that if they believe from the evidence in this case that, after those in charge of defendant's train became aware of the fact that plaintiff was on the track on which said train was running as to render his position dangerous or perilous, they or any one of them failed to use ordinary care and with the use of the means at their command, to avoid striking him, and that as a result thereof he was struck and injured, you should find for the plaintiff against the defendants or any or more of them. On the other hand, unless you do believe from the evidence that those in charge of defendant's train, after becoming aware of plaintiff's presence on said tracks as to render his position dangerous or perilous, defendants failed to use ordinary care to avoid striking him, you should find for the defendants; and, in determining the question as to whether those in charge of said train did or did not use ordinary care, you should consider the time in which they, or any of them, had to act, and all the circumstances of the situation."

The evidence had failed to show any negligence on the part of the engineer or fireman as to whom the action had been dismissed on appellee's motion. Accordingly, the instructions should have been so qualified as to permit a verdict against the Railroad Company only in the event the jury also found against one or more members of the train crew, since under the facts of the case, the Company's liability was merely derivative and arose under the doctrine of respondeat superior. Illinois Central Railroad Co. v. Appelgate's Adm'x, 268 Ky. 458, 105 S. W. (2d) 153; Sherwood v. Huber & Huber Motor Express Co., 286 Ky. 775, 151 S. W. (2d) 1007, 135 A. L. R. 263; Graefenhan v. Rakestraw et al., 279 Ky. 228, 130 S. W. (2d) 66. Had the instructions not been erroneous in the particulars referred to, the comedy, or rather, the tragedy of errors which ensued, might have been avoided. But, to resume the narrative: The jury returned a verdict awarding appellee $5,500 without stating against whom it was rendered, whereupon, the Court, at the suggestion of counsel for the appellants, orally instructed the jury to retire and state in their verdict against which defendant or defendants the verdict was found. After

retiring and deliberating, the jury returned the following verdict:

"We the Jurors award the plaintiff $5,500.00, fifty-five hundred, for the mental and physical suffering and partial disability against the L. & N. R. R. Co."

Thereupon, counsel for appellants moved the Court to instruct the jury to retire and state in their verdict whether they found in favor of or against the employee defendants. Appellee's counsel objected, and the Court overruled the motion; but after the jury had been polled and discharged, the Court, on motion of appellants' counsel, entered an order reciting that "the defendants, J. N. Jones, N. N. Newcomb, and Harry Fey, and each of them, are dismissed." Within three days thereafter the appellant Railroad Company filed a motion for a new trial, and sixteen days later filed supplemental and additional grounds for a new trial based upon the exoneration by the jury of the employee defendants. On the same day the employee defendants moved the Court to enter judgment upon the verdict dismissing the action as to them. One week later appellee moved the Court for an order "nunc pro tunc correcting the verdict herein to conform to, and to be that first and originally returned by the jury in this case so that the same will read: 'We the Jurors award the plaintiff $5500.00, fifty-five hundred, for the mental and physical suffering and partial disability.' That being the verdict first returned by the Jury"; and for a judgment against all of the defendants jointly on the "joint verdict against said defendants first and originally returned by the jury." Twelve days later appellee moved the Court to strike from the record appellants' supplemental grounds for a new trial, and to set aside the order and judgment dismissing the action as to the employee defendants. Three weeks later appellee moved the Court to note of record his exceptions to the order of the Court directing the jury to retire and reform its verdict, and for a new trial against the employee defendants "because the Court erroneously directed the jury to correct a verdict already sufficient pursuant to which the Jury returned another verdict omitting mention" of them. On the same day, the Court entered an order vacating the order dismissing the action as to the engineer and fireman, and upon appellee's motion, entered an order dismissing the action as to these

defendants without prejudice. Also, on the same day, the Court, on motion of the appellee, vacated and set aside the order dismissing the action as to the remaining employee defendants. Some four and one-half months later, the Court delivered a written opinion overruling the Railroad Company's motion for a new trial, plaintiff's motion to strike the supplemental grounds for a new trial, and the motion of the employee defendants to enter judgment dismissing the action as to them, and sustaining plaintiff's motion for an order nunc pro tunc correcting the second verdict to conform to the first verdict, and plaintiff's motion for a judgment against the Railroad Company and the employee defendants. This was followed by motions on behalf of appellants to set aside the Court's decision and for a new trial, which motion was renewed after the Court had entered a final judgment based on its opinion. The perfecting of this appeal closed the chapter.

In attempting to justify his nunc pro tunc order "correcting" the second verdict by substituting the first verdict, the Court concluded that, though silent as to whom it was rendered against, the first verdict was a true, clear, and correct verdict against all of the defendants and the Court erred in directing the jury to retire and amend it. We confess our inability to follow the Court's reasoning in the face of the fact that if we indulge the presumption that the jury intended to find against some of the employee defendants, as well as the Railroad Company, it would not follow that they intended to find against all of them. In any event, there can be no doubt that the Court was well within its rights in directing the jury to retire and make their verdict specific. Louisville & Nashville Railroad Co. v. Muncey, 229 Ky. 538, 17 S. W. (2d) 422; Walter v. Louisville Railway Co., 150 Ky. 652, 150 S. W. 824, 43 L. R. A., N. S., 126, Ann. Cas. 1914D, 441. In the present case at least, the ends fully justified the means, since, by its corrected verdict, the jury demonstrated its intention to find against none of the employee defendants. To sustain the Court's conclusion that the first verdict was a "true, clear, and correct verdict against all the defendants," we would have to assume that the jury changed its mind after rendering that verdict. That the Court regarded the second verdict as making certain that which had been uncertain is conclusively shown by the fact that he overruled defendants' motion to have the jury retire and state whether it found

in favor of or against the employee defendants, discharged the jury after it had been polled, and, according to the record, sustained defendants' motion to dismiss the employee defendants from the case. But, however this may be, the Court had no power, by nunc pro tunc judgment or otherwise, to change or correct the verdict after the jury was discharged, or to enter any judgment thereon except in accordance with its terms. Faman v. Lexington Ice Mfg. & Storage Co., 8 Ky. Law Rep. 97; Youtsey Bros. v. Darlington, 233 Ky. 112, 25 S. W. (2d) 44; Romans et al. v. McGinnis, 156 Ky. 205, 160 S. W. 928. In the first mentioned case this Court said:

> "No matter through what channel the court has ascertain that the jury intended to make a verdict different from the one returned, it has no power to correct the mistake and enter a judgment accordingly. Under proper circumstances the jury might be recalled and allowed themselves to correct the verdict, or the court might grant a new trial, but whenever the judgment is entered it must be upon the verdict of the jury as signed and returned by them. If the judge makes the correction, though it is admitted to be then as they intended, yet that intention has never been manifested by the writing, signed by the foreman, nor have they ever been asked by the clerk, while assembled as a jury, whether the verdict as corrected was theirs. It is not sufficient that the verdict would have been different had the mistake not occurred. The appellee had no right to a judgment except upon the jury's verdict. The mistake was its misfortune. Although the court may have had the power to partially protect appellee from its consequences by refusing to render a judgment for the other side, there was no authority for altering the verdict for the purpose of rendering a judgment in appellee's favor."

Thus appellee finds himself in the position occupied by the appellee in the case of Illinois Central Railroad Co. v. Appelgate's Adm'x, supra, where the engineer was sued jointly with the Railroad Company and the verdict was rendered against the Railroad Company. Said this Court [268 Ky. 458, 105 S. W. (2d) 159]:

> "The sole negligence relied upon in this case was the failure of the engineer to give a warning signal at the crossing, and if this were a case of first

impression we would not hesitate to adopt the rule followed in practically all other jurisdictions. But, if the case should be reversed now, it could not be sent back for a new trial and the appellee would be left without remedy, since the judgment in favor of the engineer has become final and the only consistent judgment that could be entered as between the appellant and the appellee would be one dismissing the petition. This situation did not result from the fault of the appellee. He practiced the case, and the court instructed the jury, in conformity to the rule announced in the Murphy [Illinois Cent. R. Co. v. Murphy's Adm'r, 123 Ky. 787, 97 S. W. 729, 11 L. R. A., N. S., 352] and subsequent cases. Had the rule been otherwise, he would have been required in order to preserve his right of action against the railroad company, to make a motion for a new trial as to the engineer, Highbaugh, and the trial court could have corrected the incongruous situation created by the inconsistent verdicts by sustaining both motions for a new trial. We do not think the present case is a proper one in which to consider the overruling of our former opinions.''

Counsel for appellee seek to escape the dilemma by arguing that there was evidence afforded by the physical surroundings and the curve in the track, that Fagaly, the fireman, by reason of his position in the cab of the engine, actually saw appellee fall in time to have caused the train to have been brought to a stop before striking him, and hence, that the verdict against the Railroad Company alone, if we construe it to be such, is supportable because of the negligence of Fagaly who had originally been joined as a defendant, but was dismissed on plaintiff's motion at the conclusion of the testimony. In support of this argument, appellee cites the cases of Chesapeake & Ohio Railroad Co. v. Booth, 149 Ky. 245, 148 S. W. 61; Becker v. Louisville & Nashville Railroad Co., 110 Ky. 474, 61 S. W. 997, 53 L. R. A. 267, 96 Am. St. Rep. 459; Wimsatt's Adm'x v. Louisville & Nashville Railroad Co., 235 Ky. 405, 31 S. W. (2d) 729. But we are unable to find any evidence in the record which would have warranted the jury in disbelieving Fagaly's statement that his view of the track where appellee fell was cut off by an operator's shanty, and that he never at any time saw appellee. Even if he had seen him fall and signalled the engineer to stop, there is no proof that the

time consumed in stopping could have been lessened. While not conclusive, the conduct of appellee's counsel in dismissing the action against Fagaly indicates that they were of like opinion, and it is to their credit that they do not now claim that they dismissed the action as to Fagaly in order that the employer might be held responsible for his negligence in the event the remaining employee defendants were exonerated.

It is also argued that appellants should not have been permitted, sixteen days after the verdict, to file additional and supplemental grounds for a new trial predicated upon the exoneration by the jury's verdict of the employee defendants. But we find no merit in this contention. As said by the Trial Court in overruling appellee's motion to strike the additional ground:

"There is no provision of the Civil Code of Practice permitting or preventing the Court to allow Additional Ground for a New Trial to be filed after the three days. The Court is of the opinion that this is a discretionary matter to be allowed or disallowed in furtherance of justice.

"In Houston v. Kidwell, 83 Ky. 301, the Court held that if the Additional Ground for a New Trial states an error in the trial to the parties complaining which should be considered, the Court should permit the Additional Ground or Grounds to be filed. This is the situation here. The Additional Ground which makes the attack upon the form of the verdict presents the paramount problem which the Court is now considering.

"In the original Motion and Grounds for a New Trial one of the grounds set out therein was 'because the verdict is contrary to law.' The Additional Ground is a specific statement of this ground for a new trial."

See, also, Wooldridge v. White, 105 Ky. 247, 48 S. W. 1081; Million v. Million's Ex'rs, 104 S. W. 768, 31 Ky. Law Rep. 1156.

It is also argued by appellee that in order for the master to claim nonliability because of the exoneration of the employee defendants when sued jointly, and the master's liability, if any, is purely derivative, the exoneration of the servants must be expressed affirmative-

ly in the verdict. But we are unable to find any support for this argument in reason or authority. The intention of the jury controls in any event, and the final verdict in the case at Bar, considering the admonition from the Court under which it was rendered, leaves no doubt of the intention. Moreover, a complete answer to this argument of appellee is the fact that the verdict in the case of Illinois Central Railroad Co. v. Appelgate's Adm'x, supra, although not disclosed in the opinion, merely read:

"We, the jury, find for the plaintiff, Mrs. Clara Kinkead Appelgate, a lump sum of $6500.00 against the Illinois Central Railroad Company."

Only the jury possessed the power to change the wording of the verdict, and the fact that the Court's power to set it aside in so far as it found against the Railroad Company was indefinitely extended by the Railroad Company's motion for a new trial did not operate to extend the three-day period in which appellee might have sought similar relief by filing a motion for a new trial of its alleged cause of action against the employee defendants.

Thus we are forced to the conclusion that since the verdict ultimately rendered cannot be interpreted otherwise than as an exoneration of the employee defendants, the Court was wholly without power to enter any judgment against the employer defendant so long as that verdict remained operative, and that since appellee failed to move for a new trial within three days after that verdict was rendered and the employee defendants dismissed in accordance therewith, there is now no remedy. This seemingly harsh result, however, is somewhat mitigated by the fact that it is extremely doubtful that there was sufficient evidence of negligence to take the case to the jury in the first instance. Moreover, he may yet recover compensation for his injuries if, at another trial, he is able to prove actionable negligence on the part of the Railroad Company's employees other than those who were exonerated by the verdict of the jury.

Judgment reversed for proceedings consistent with this opinion.