## Pope-Cawood Lumber & Supply Co. v. Dean et al.
December 13, 1946.

538

A. Joe Asher and G. E. Reams for appellant, Pope-Cawood Lbr. & Supply Co.

E. L. Morgan for appellant Chester Dean.

Ray O. Shehan and Daniel Boone Smith for appellee, Paul Day.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Appellee, Chester Dean, brought this action against Pope-Cawood Lumber & Supply Company (hereinafter referred to as the Company) and Paul Day to recover $880 alleged damages done his stock in a small grocery and his household goods located in two rooms in the rear of the store. The petition avers that the damages resulted from defendants' negligent act in upsetting the building in which plaintiff's store and home were located. Upon a trial the court directed a verdict in favor of Day, and the jury returned a verdict in favor of Dean for $500, and from the judgment entered thereon against the Company, it appeals.

Day owned a building located in the village of Cawood, Harlan County, which he had rented to, and was occupied by, Dean both as a store and as a home. The building had been constructed on sloping ground and to keep the rear of it level it was necessary to rest it on nine foot piles, or pillars, and it appears to have been none too securely erected. It was a small house of three rooms and a front porch, which latter extended to near the edge of the highway.

On the day previous to the accident, Paul Day ordered 50 bags of cement through Thurman Qualls, an employee of the Company, in the presence of Bobby Day, another employee and a brother of Paul. These three men all testified that the cement was to be delivered by the Company and placed under the store porch. On September 27, 1945, Earl Shackleford, the driver of the Company's truck, drove into Cawood with 50 bags of cement, which weighed 4700 pounds, and took the bill to Mrs. Paul Day, who paid him with money her husband had left with her for that purpose. Earl's testimony is to the effect that after he told Mrs. Day he had brought the cement and she had paid him, she instructed him to unload it on Dean's porch. Mrs. Day's testimony is that she paid for the cement and received the bill for it from Earl and she told him she would go with him to her home and show him where to unload it; that he responded he had orders to unload it at Day's Grocery (which was where Dean was living and running his store), and that she never instructed him to unload it there.

There is also a conflict in the evidence as to what

transpired between Earl, and Chester and Mrs. Dean when he unloaded the cement on the latter's porch. Earl's testimony is that Chester was not present and that he told Mrs. Dean that his orders were to unload on her porch, and "She told me to go ahead." Chester testified that he was present and warned Earl "That porch won't hold that much weight. * * * He put it off anyway, saying, 'I have got to put it off.' " Mrs. Dean corroborated her husband and further testified that she told Earl that the porch was breaking and that he would have to take the cement off. of it.

There is a contrariety in the proof as to just when the building fell, but it is uncontradicted that at some time during the day the weight of the cement caused it to collapse and Chester's stock of groceries and household goods went down with it. The testimony of Chester, his wife and a disinterested witness or so, was that some containers of liquids, such as syrup, juices and mustard, broke and ran over his other stock and ruined it, and that his household goods were damaged beyond use. But Paul Day, who helped remove the goods from the building after it fell, testified that it was apparent the collapse of the building was gradual and there was practically no damage to the grocery stock or household goods; that $4 or $5 would cover all of Chester's loss.

The Company asks a reversal of the judgment because: 1. It was entitled to a peremptory instruction. 2. It was error to direct a verdict for Day. 3. It was error to enter a supplemental judgment in Day's favor. 4. The instructions given were erroneous. 5. The verdict is excessive.

The Company insists that it was entitled to a peremptory instruction because the cement was delivered at the agreed place and that relieved it of liability, citing several authorities. An examination of those cases shows they relate to contract and not to tort actions; therefore, they have no bearing on the question confronting us. It further argues that as Day's wife accepted the cement and instructed the Company's driver to unload it on Dean's porch, the Company is not liable for the resulting damage. But the evidence is conflicting as to whether Mrs. Day instructed the driver where to unload it, thereby raising an issue of fact for the jury,

hence the Company was not entitled to a directed verdict.

The Company is in no position to complain that a verdict was directed in favor of Day as the court had properly sustained a demurrer to its cross-petition against Day, since in an action against two alleged wrongdoers neither can cross-petition against the other in that action, when he has paid nothing, as the plaintiff is entitled to a trial without being annoyed by the controversy between the two defendants. Consolidated Coach Corp. v. Wright, 231 Ky. 713, 22 S. W. 2d 108. The appellee, Dean, is the only party who can complain of the directed verdict in Day's favor, and Dean has not appealed.

Nor is there merit in the contention that the court had no authority to enter a supplemental judgment in favor of Day after the jury returned a verdict reading, "We, the jury agree and find for the plaintiff the sum of $500.00." Day had moved for a peremptory instruction at the end of plaintiff's evidence and the court passed his motion until all the evidence was in. At the conclusion of all the evidence, Day renewed his motion and the court ruled: "I am giving a peremptory instruction as to the defendant, Paul Day. The jury will find and return a verdict for the defendant, Paul Day." However, it appears that the court did not go through the formality of preparing and having the jury sign a directed verdict in favor of Day. But the court's formal, written instruction No. 4 reads: "The jury will find for the defendant, Paul Day." The day after judgment had been entered against the Company on the verdict, the court realized that the jury had not specifically set out in the verdict that it had found for Day and he entered a supplemental judgment reciting this fact and dismissing the petition.

We are in accord with the Company that the Court was without authority to change or correct the verdict after the jury was discharged, or to enter any judgment thereon except in conformity with the terms of the verdict, as was held in Louisville & N. R. Co. v. Farney, 295 Ky. 8, 172 S. W. 2d 656. Here, the court did not attempt to change the verdict, nor did he enter any judgment which was not in accordance with the terms of the

verdict. This verdict cannot be construed as a finding against both the Company and Day as was a similar verdict construed to be a finding against two defendants in Newport Coal Co. v. Ziegler, 255 Ky. 429, 74 S. W. 2d 561. Here, the jury had been given a peremptory instruction to find for Day; moreover, No. 4 of the formal written instructions told the jury to find for the defendant, Day. So when the jury returned the verdict for plaintiff without designating whom it was against, it could have intended to find against only the Company. In deciding in the Ziegler opinion that the verdict was against both defendants in view of the court's instruction, we lifted this from Murray v. Cowherd, 148 Ky. 591, 147 S. W. 6, 10, 40 L. R. A., N. S., 617, "Interpreted in the light of the record, there is no difficulty in ascertaining what the jury meant." So here, interpreted in the light of the peremptory instruction, also instruction No. 4 to find in favor of Day, we have no difficulty in determining that the jury meant to find only against the Company. Therefore, the court did not err in entering the supplemental judgment in Day's favor.

By an amended answer the Company pleaded that if plaintiff was damaged, it was not through its negligence in placing the cement on the porch, but through the negligence of Day's agent in instructing the driver so to do, as the Company was obligated to abide by the instructions of Day where to unload the cement. It is not disputed that Day had left the money with his wife and instructed her to receive and pay for the cement. Mrs. Day admits she received and paid for it. There being no conflict in the evidence on this point, the question of her agency was one of law for the court to decide. 2 Am. Jur., Agency, sec. 454, p. 359. If the Company's driver unloaded the cement on plaintiff's porch under the direction of Mrs. Day, who was acting as agent for her husband in receiving it, then the Company is not liable. But the evidence is conflicting as to whether or not Mrs. Day directed the driver to unload on plaintiff's porch, therefore, the court should have submitted that question to the jury. The Company offered Instruction B which reads:

"If the jury further believe from the evidence that the damage sustained by plaintiff, if any, was occasioned by the sole direction and instance of defendant, Paul

Day through and by his wife and agent, and that defendant Pope-Cawood Lumber and Supply Company, its agent or servant was only doing the bidding of the said Paul Day, his agent or servant, then you will find for the defendant, Pope-Cawood Lumber & Supply Company.''

This instruction appropriately submitted the question to the jury and the court erred in refusing to give it.

The second instruction given was erroneous as it gave the jury no standard by which to measure the damages. That instruction reads:

''No. 2. If the jury find for the plaintiff, they will award him such sum in damages as they believe from the evidence will fairly and reasonably compensate him for the damage to stock, goods and other supplies not exceeding however the sum of $880.00 the amount claimed in the petition.''

That part of instruction A offered by the Company relative to the measure of damages contained the same defect as the second instruction given by the court; therefore, the Company cannot be heard to complain of the error in instruction No. 2, since the Company invited it. Pope-Cawood Lumber & Supply Co. v. Cleet, 236 Ky. 366, 33 S. W. 2d 360; Wathen v. Mackey, 300 Ky. 115, 187 S. W. 2d 1000, and the many authorities cited in the latter opinion. The measure of damages to plaintiff's property is the difference in its fair market value, if any, immediately preceding and immediately succeeding the injury to it; Gess v. Wilder, 237 Ky. 830, 36 S. W. 2d 617. On another trial the court will properly instruct on the measure of damages and it might not be amiss for us to suggest that he consult Stanley's Instructions to Juries, sec. 321, p. 397.

We deem it unnecessary to decide whether the damages are excessive, as we do not know what the evidence may be on another trial, or what verdict the jury may return, and that question is reserved.

The judgment is reversed for proceedings consistent with this opinion.