**HAYES FREIGHT LINES, Inc. v. HAMILTON.**

Court of Appeals of Kentucky.
Feb. 20, 1953.

Rehearing Denied May 8, 1953.

M. C. Redwine, Redwine & Redwine, Winchester, Jack E. Horsley, Craig & Craig, Mattoon, Ill., for appellant.

H. M. Shumate, Irvine, for appellee.

DUNCAN, Justice.

Separate actions were instituted by Harold Ray Hamilton and Mrs. Grace Hamilton against Hayes Freight Lines, Inc., and John D. Winn. The actions were tried together in the lower court, and judgments were rendered against Hayes Freight Lines in favor of Harold Ray Hamilton in the amount of $23,000 for personal injuries and in favor of Mrs. Grace Hamilton for $528.51 for damages to a boiler. Winn was exonerated from liability by the verdict of the jury. The judgment in favor of Harold Ray Hamilton was set aside in an action subsequently filed for that purpose for reasons which appear in Hamilton v. Hayes Freight Lines, Inc., Ky., 251 S.W.2d 277. The present appeal by Hayes concerns only the judgment rendered in favor of Mrs. Hamilton.

The appellant, Hayes Freight Lines, Inc., a common carrier of interstate freight, transported to the appellee, Mrs. Grace Hamilton, a boiler which was shipped to her from Detroit, Michigan, for use in her dry cleaning plant. Upon arrival, Mrs. Hamilton procured the aid of her brother, John D. Winn, the owner and operator of a wrecker with winch attachment, to assist in unloading the boiler. Her son, Harold Ray Hamilton, and Henry Williams, the driver of appellant's truck, also assisted in the unloading.

Williams, who was standing in the truck, using a crowbar, attached the winch to the boiler. Harold Ray Hamilton had been in the truck but had gotten out on the ground and was signaling to John D. Winn, who was in the wrecker operating the winch. After there had been some movement of the boiler by the winch, Harold Ray made a signal to Winn to stop. There is evidence that Winn did stop and had practically gotten out of the wrecker but Williams continued to prize the boiler with his crowbar, thus causing it to fall. As a result of the fall, the boiler was damaged and Harold Ray Hamilton received serious injuries.

Although there was considerable dispute as to who was actually directing the unloading operations, we do not consider that point as controlling. Even if the operation was being directed by Winn, or Harold Ray Hamilton, there is ample evidence from which the jury could have found that the falling of the boiler was brought about entirely by appellant's truck driver in prizing it off the truck with his crowbar after all other movement was stopped.

Appellant insists that it was entitled to a peremptory instruction because of the provisions of Rule 21, which is filed with the Interstate Commerce Commission, and forms a part of the tariff schedule of the National Motor Freight Classification. Section 1 of the rule provides:

"Where an article (or articles) in a single container or shipping form tendered, weighs 500 lbs. or more * * *, loading or unloading shall be performed by the shipper or consignee, as the case may be. If requested, carriers will undertake, in behalf of the shipper or consignee, as the case may be, to employ additional help. No charge will be made for labor performed by the truck driver, but a charge of one dollar and fifty cents ($1.50) per hour or fraction thereof, for each man furnished, other than the truck driver, shall apply from time vehicle arrives at the place of pick-up or delivery until shipment is loaded or unloaded, as the case may be."

There is no doubt that tariff schedules filed with the Interstate Commerce Commission become regulations of the Commission and as such form a part of the contract between the carrier and consignee. Appellant insists that by reason of this rule the sole responsibility of unloading fell upon the consignee, and its driver in assisting in that operation was doing so as agent or employee of Mrs. Hamilton. This Court has not heretofore passed upon the

point which is presented, and authorities from other jurisdictions seem to be divided on the question. Some of the authorities cited on both sides seem clearly distinguishable either on the facts or because of a material difference in the terms of the regulations there involved. We shall discuss here only the cases which, in our opinion, more nearly fit the present case.

In the case of Hanaman v. Liberty Trucking Co., 243 Wis. 478, 11 N.W.2d 130, 132, 149 A.L.R. 640, the Wisconsin Supreme Court had before it a regulation similar to the one involved here, and in considering its effect, it was said:

"The rule in the tariff schedule relating to unloading articles requiring more than the driver of the truck to unload them provides that the consignee shall furnish extra help, but this does not exonerate the defendant from the duty of unloading, especially as it is further provided that if the carrier is required to furnish the extra man or men required the consignee shall pay for the extra men at a specified rate per hour. The latter provision declares the effect of the consignee's not furnishing help to the carrier and thus affects the tariff rate, but it does not shift to the consignee the duty of unloading. * * * The defendant is apparently contending that item 990 of the tariff schedule exempts it from tort liability. We do not so construe it. It is in a tariff schedule and relates to tariff liability."

In the case of Loveless Manufacturing Co. v. Roadway Express, D. C., 104 F. Supp. 809, 813, the United States District Court for the Northern District of Oklahoma had before it the identical regulation which is involved in the present case. There, notwithstanding the provisions of the regulation, the carrier, through its soliciting agent, had represented to the shipper that it would unload the shipment and actually did undertake the unloading without requesting additional help. The court said:

"In the case before this court, the evidence discloses that Roadway through its soliciting agent represented that it would unload the shipment on arrival. In addition to this, the evidence discloses that no request was ever made by Loveless to have the carrier employ additional help to unload, nor did Roadway ever call the attention of Loveless to the tariff involved. It cannot be denied that Loveless is charged with constructive notice of the tariff, but if ever the law put a duty upon a person to speak out, such law should be applicable to this case when Roadway was well aware of its own tariff regulation and did not call it to the attention of Loveless. Be that as it may, the fact remains that Roadway did undertake the unloading of the machine. It is immaterial that the tariff put the responsibility of the unloading upon consignee, or stating it negatively, that the carrier could not lawfully do the unloading. The mere fact that the tariff provides that the consignee shall do the unloading does not and cannot logically mean that the carrier could not violate the law or that its agents were the agents of Loveless."

In Ramsey v. New York Central Railroad Co., 269 N.Y. 219, 199 N.E. 65, 67, 102 A.L.R. 511, the New York Court of Appeals had before it a somewhat similar regulation. Notwithstanding its provisions, the railroad maintained a crane and operator for the use of its shippers and the accident there involved occurred while unloading was being performed by the railroad's crane and operator. In its opinion, the court said:

"The fact is undisputed that the respondent's crane was being operated by its servant over whom it retained complete control. The rule of the Commission cannot change the facts. It would be strange indeed if the respondent, by violating the rule of the Commission could by such violation or by loaning its servant to the construction company change its relation to the employee and make such employee the servant of the construction company without the consent of the servant or of the construction company, either expressed or implied."

A contrary view to that reached by the New York Court was expressed by the Michigan Court in Rockwell v. Grand Trunk Western R. Co., 264 Mich. 626, 250 N.W. 515, 516, where it was said:

"Thus, in the instant case, the contract between the shipper and carrier places the obligation of unloading the carload lot upon the shipper or consignee. * * * Thus as a matter of law, as well as a matter of contract, in this interstate shipment the duty of unloading devolved solely upon the consignee. * * * At his option he might or might not take advantage of the conveniences afforded by the carrier in unloading the shipment. While in no way obligated to do so, in the instant case the defendant had provided at Flint a Gantric crane, the use of which together with an operator was tendered to shippers to aid them in unloading heavy articles. * * * the only justifiable conclusion is that the defendant carrier loaned this unloading device and its employee in operating the same to the consignee".

Here we have three completely divergent views, each expressed by courts of last resort in other States. and a fourth view expressed by a U. S. District Court. We are not in complete agreement with any of the cases cited. We are unwilling to treat the regulation, as did the Wisconsin Court, as a mere tariff regulation, and we are unable to agree with the Michigan Court in adopting the legal fiction that by reason of the regulation the carrier's employee became temporarily the employee of the consignee. Neither do we accept the view of the U. S. District Court that it was the duty of the carrier to specifically call the regulation to the attention of the shipper. We more nearly agree with the New York Court in the Ramsey case.

In the present action, it seems to us that we would be stretching realities to hold that the truck driver in assisting in the unloading became for the moment the servant of Mrs. Hamilton. Regardless of where the regulation placed responsibility for the unloading, the truck driver, without violating any of the provisions and in complete conformity with its terms, was assisting in the removal of the boiler. His remuneration for such services was payable entirely by Hayes. As part of the carrier's duty to the consignee, the aid of the driver was being furnished without cost. We, therefore, are constrained to the view that appellant's driver in assisting in unloading the boiler was doing so as the employee of Hayes, notwithstanding the provisions of the regulation involved.

Appellant also complains of the instructions given to the jury. We think the objection is well taken insofar as it relates to Instruction 4. This instruction, which related to the measure of damages, was as follows:

"The jury is instructed that if they find for the plaintiff they should award her the sum of $528.51."

The instruction completely ignores the measure of damages which has been recognized and applied by this Court without exception in cases involving damage to personal property. The jury should have been instructed that if they found for plaintiff they would award her such a sum in damages as would represent the difference in the reasonable market value of the boiler immediately before and immediately after the fall, not exceeding the amount sued for. Pope-Cawood Lumber and Supply Co. v. Dean, 303 Ky. 537, 198 S.W.2d 227; Gheens v. Bush, 258 Ky. 540, 80 S.W.2d 581.

Other grounds are relied upon as constituting error, but inasmuch as there is no reasonable likelihood of their recurrence upon a subsequent trial, we shall not consider them here. We may remark that statements similar to some of those attributed to counsel for appellee in his argument have been criticized in other opinions of this Court.

For the reason indicated, the judgment is reversed for proceedings consistent with this opinion.